THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFF IN ERROR, v. BENJAMIN F. MIDDLETON, ADMINISTRATOR, &c., OF ELMER V. HUNT, DECEASED, DEFENDANT IN ERROR.

1. In an action where the gravamen is the negligence of the defendant, on a motion to nonsuit, on the ground of contributory negligence of the plaintiff, or the plaintiff's intestate when death ensues, the contributory negligence must clearly appear, as a conclusion of fact, or by necessary exclusive inference, from the proof which is adduced by the plaintiff.

2. No presumption of 'negligence in the decedent arises in any such action from the mere occurrence of the accident. The facts and circumstances, as a basis for a nonsuit, must be of such probative force, in the evidence of the plaintiff, that .contributory negligence so conclusively appears as to exclude any other legitimate inference or conclusion. The facts and circumstances, where they are of doubtful import, and difficulty arises as to the solution of the question whether contributory negligence exists or not, are for the consideration and determination of the jury.

3. The conclusion that the decedent was in the exercise of ordinary care and caution, to avoid danger and injury at the time of the accident, need not be established by any direct proof, but it becomes the subject of circumstantial evidence, and from the circumstances in evidence by the plaintiff it must be clearly ascertainable that, by acts of omission or commission, there existed a want of reasonable and ordinary care upon the part of the decedent before a judgment of nonsuit will be ordered.

On error to the Supreme Court.

For the plaintiff in error, *Samuel H. Grey.*

For the defendant in error, *John J. Crandall* and *Timothy J. Middleton.*

The opinion of the court was delivered by

LIPPINCOTT, J. This is an action by the plaintiff, as administrator of Elmer V. Hunt, deceased, against the defendant, to recover damages for the benefit of the widow and the next of kin, by reason of the death arising from the alleged negligence of the defendant.

At the close of the evidence on the part of the plaintiff, a motion for a nonsuit was made by the defendant, on the ground that the case of the plaintiff showed that the decedent was guilty of contributory negligence, and therefore could not recover. This motion the trial justice refused, and upon this refusal error has been assigned.

Therefore, the question is whether the trial justice erred in not granting a nonsuit.

The deceased was killed at a place known as Main's rail-

road crossing of a public road called the New Albany road, near a station·called Lenola, some distance west of Moorestown, in the county of Burlington, on the 12th day of September, 1893, about four o'clock in the morning. He was at this time returning from Philadelphia to his home, a short distance east of the crossing, with a two-horse team drawing a truck wagon and shelving thereon, with which he had taken earlier in the day or night a load of truck to market, and whilst he was crossing the railroad of the defendant company, on his return from market, an engine, with a tender attached, collided with the wagon and he was killed. The horses were not killed, but the wagon was destroyed, and he was found dead beside the track, about one hundred and thirty feet easterly of the crossing. The morning was quite dark. Some of the witnesses for the plaintiff speak of it as a very dark morning. There were no witnesses who saw the accident, except the engineer at the very moment. The crossing of the railroad tracks by the public road is not at right angles, but diagonally. Mr. Crider, a witness who was at the time living on the New Albany road, about two hundred and fifty yards from the railroad crossing, was lying awake in his bed and heard the rumbling of the wagon going past his home towards the railroad crossing. He also heard the engine approaching, and, from where he was in bed, saw the headlight of the locomotive flash upon the windows of his bed-room, and then he heard the crash of the collision. He then aroused some members of his family and went to the crossing, and found Hunt dead at the spot to which reference has been made. The engine and tender had come from Camden and were going to Long Branch for duty that day, to take a train from Long Branch to Trenton, and were, at the time, running at the high rate of speed of about from forty to fifty miles per hour. The deceased, with his team, was traveling in the same (an easterly) direction, along this road, to his home. The evidence on the part of the plaintiff shows that the public road along which the decedent was driving commences, about thirty feet away from the track, to descend at the rate of about three or

four feet in fifty, and at this point the track is somewhere between three and six feet below the surface of the surrounding land. The station of Lenola was a short distance, in a westerly direction, from the crossing. At this station there were signal lights, and at other places, in a westerly direction, for some distance, there were one or more switch lights, which could be seen in approaching the crossing by the public road, and seen from the crossing, and lights were about eight or nine feet above the surface of the track. It was in evidence, also, that along the track, on the side thereof nearest the public road, there were several telegraph poles, about twenty to twenty-five feet from the middle of the track. On the same side of the track, in a westerly direction, there were several trees, five in number, which have branches so low as to be within three or four feet of the ground. There is some evidence, also, that from the scene of the accident a view of the track cannot be had for more than about forty feet in a westerly direction, from which this train was approaching the crossing, but the angle of the track, close at hand, which causes this situation, is not such that it alone would obscure the view of the track by anyone approaching the crossing on the road. This seems to be the general situation at the place of this occurrence.

The evidence for the plaintiff is that the whistle of the engine was not blown nor its bell rung at any time before the engine approached the crossing or whilst it was so approaching. Mr. Crider testifies to this fact positively and directly. Other witnesses living close to the crossing also testify that the whistle was not blown nor the bell rung. On motion to nonsuit there was not, as there could not be, any attempt to deny the existence of the negligent default of the engineer and other servants of the defendant company in giving these statutory warnings. Whether such warnings were given or not, the evidence on the part of the plaintiff was quite conclusive as to this neglect, and the motion to nonsuit was made, not because there did not exist affirmative negligence of the servants of the defendant in running the engine over

the crossing, presumably causing the collision, but on the ground that the defendant was guilty of negligence contributing to his injury and death, and the only complaint which now can be urged against the determination of the trial justice is that there was error in law in not withdrawing the case from the jury.

Whilst this question requires some examination of the circumstances of the occurrence, yet a discussion of the conclusions and inferences which ought to have been drawn or rejected involves a controversy which renders it evident that it should not be determined by the trial court. It only requires that attention be confined to a consideration of a few of the leading facts and circumstances to ascertain whether the case as presented by the plaintiff was not of the nature which, in the law, was within the exclusive province of the jury to determine.

On a motion to nonsuit, in order to withdraw the case from the jury, the contributory negligence must appear clearly, as a conclusion of fact or by necessary exclusive inference, from the evidence which is adduced by the plaintiff.

It must appear in the proof of the plaintiff that the decedent, by some act of omission or commission on his part, contributed to the collision which resulted in his death. *Palys* v. *Erie Railway Co.*, 3 *Stew. Eq.* 604; *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180. This principle has been reiterated, in one form or another, in all our adjudications. The proof of the occurrence of the accident is not sufficient of itself to establish the negligence of the defendant. It does not give rise to the presumption of negligence. *Bahr.* v. *Lombard, Ayres & Co.*, 24 *Id.* 233. It was not disputed, on the motion to nonsuit, that the testimony of the plaintiff disclosed circumstances, such as the absence of the required statutory signals of warning, from which the negligence of the defendant might be concluded or inferred, and therefore it was required to be submitted to the jury unless the contributory negligence of the decedent was clearly discoverable or inferable from the other facts and circumstances of the case. In the

consideration of these other facts and circumstances adduced in the evidence of the plaintiff, the trial justice could apply no unfavorable presumption against the decedent. The mere proof of the accident raised no presumption of contributory negligence on his part. From the mere accident there could arise no conclusion or inference of the want of ordinary care or caution in approaching and going over this crossing, but, from the accident and its attendant circumstances, taken together, there must have appeared sufficient evidence for the trial court to declare that negligent conduct on his part, or want of ordinary care, clearly appeared, and without this conclusion, thus arrived at, there existed no legal power to exclude the jury from the consideration of whether contributory negligence existed or not.

There was no witness who could at all detail the conduct of the decedent, because no one saw the occurrence. This want of proof can give rise to no presumption against him as to the character of his conduct. He was bound to his legal duty, which was to exercise reasonable care, and to exercise ordinary caution and circumspection under all the circumstances, in approaching and going across. This legal duty required of him the reasonable and ordinary use of all his senses, and all his physical powers reasonably exerted to avoid danger. He was bound to look and listen, before he attempted to cross, and whatever danger he could have discovered by looking and listening he incurred the peril of if he proceeded. These were legal obligations on his part, the neglect of which, if injury arose to him, left him without remedy. The courts of this state have not as yet proceeded so far as to declare that there exists a legal obligation to stop absolutely before entering upon a railroad crossing of this character. Whether any such obligation will be ever established is a question which need not, in view of the circumstances of this case, be discussed. Upon the evidence of the plaintiff, it would have been very difficult for the trial justice to have declared, in order to grant the motion to nonsuit, that the decedent did not stop, look and listen, for under the cir-

cumstances all these things may have happened, and the observation to be gained by such conduct may have been obtained, and yet the accident still have happened.   The defendant, on this question of contributory negligence, on a motion to nonsuit, had no right to demand positive evidence from the plaintiff that the decedent did stop, look or listen, for if that were true, in cases where death results, the beneficiaries of the decedent would, in a great many instances, be entirely remediless, whatever the circumstances proven may have been.   The determination of these elements of care and caution depends upon the circumstances of each case, and belongs to the jury unless the trial court finds that they are such that but one result is deducible.

Returning again to some consideration of the facts.   The decedent was required to exercise ordinary care under all the circumstances to avoid danger—to avoid collision and resulting injury.   This requires the exercise of judgment, and whether he exercised good judgment depends upon the circumstances which confronted him, and by which he was surrounded.   The decedent with his team and wagon approached and went on the crossing upon a walk.   The reflection arises that his wagon could not have been making much noise in its movement, and thereby affording much greater opportunity for him to hear the approaching train ; but on the other hand it might well be said that the engine and tender would make but little noise, as a matter of warning.   He had his team to watch, and the engine was running at a great rate of speed. In going towards the track and just before reaching the crossing, he was bound to encounter a descent of about three feet in thirty, which might create some difficulty in managing his team, so as to be in absolute control of it.   In the direction from which the train was approaching, the signal lights of the station and the switch lights were placed alongside or on the tracks, placed at about the same height as the locomotive headlight, and which could, according to the evidence, be readily mistaken for the signal or switch lights ; along the tracks and close by the track were a number of telegraph

poles and five trees, which, by the evidence, to some extent, at least obscured the view of an approaching train, at a distance away on the public road of from twenty-five to fifty feet. He was driving in nearly the same direction that the train was approaching, with the train behind him, and as the wind was blowing in an opposite direction, no sound of the approaching train may ever have reached him, and the train coming in that direction, it very readily and naturally might be that he would not perceive the headlight at all. That he was awake before and at the time of the accident may be indicated from the fact that a part of a cigar yet warm was picked up at the place of the accident, and under the evidence it can be concluded that the decedent was smoking it when the engine collided with the wagon, which was struck in the middle portion thereof. The night, according to the evidence of all the witnesses, at the hour of the accident, was very dark, and as no whistle was blown or bell rung, as we are bound to believe upon the evidence, it may be a grave question of fact whether he could otherwise be notified of an approaching train. In the darkness of the night his view would be worth but little to him, save as he might see the headlight, which he may not have been able to distinguish from the signal or switch lights, and therefore, instead of aiding him, they may have confused and embarrassed him. Besides, it is to be remembered that this was not a regular train with a schedule of time, and the decedent cannot, as matter of fact, be held to have expected an approaching train at this hour of the night. He lived close at hand to this crossing, and presumably it may be said that he was aware of the time trains regularly reached this crossing, but this was an engine and tender on a special errand, without schedule time and not to be expected by anyone.

Upon these facts, was it for the trial court to determine or infer that the accident was one to which his own want of ordinary care contributed? It may be that he exercised none of the precautions required of him; it may be that he omitted

some precaution required of him and the omission contributed to the result; it may be, as a logical deduction from these facts and circumstances, that he stopped, looked and listened, and exercised all the care and caution required in the performance of his legal duty.

Now, upon these facts and circumstances, I think it is apparent that it would extend the power of the trial court beyond the line defined by the law to have required it to order a nonsuit. The case is not one without grave difficulty and considerable doubt upon the question whether the decedent was in culpable default contributing to his death, but if this difficulty and doubt exist, then so much stronger the reason that the court should not trench upon the province of the jury to solve the question of fact in controversy.

Under the cases, if the mind of the trial justice was in some state of doubt upon the question whether the decedent exercised that degree of care which his legal duty exacted, then it was a matter within the exclusive power of the jury to determine. *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Vroom* 531; *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton*, 26 *Id.* 342.

The important question in this case arose on the motion to nonsuit, and it was determined by the trial justice upon the proper application of the principles of law established by the adjudications of this court.

I have examined the requests of the defendant, to the trial court, to charge the jury, in connection with the charge as delivered to the jury, upon which error has been assigned, and I can discover no error in the refusal to charge as requested.

Besides, the discussion of the assignment of error on the refusal to nonsuit has practically covered the questions raised by the requests to charge.

The instructions of the trial justice to the jury, upon the whole case, seem to be in entire conformity with the law applicable to the facts.

I shall therefore vote to affirm the judgment of the Supreme Court.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, DIXON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SIMS, SMITH. 14.

*For reversal*—None.