ALLEN H. BREWSTER, PLAINTIFF IN ERROR, v. NEW
YORK CENTRAL RAILROAD COMPANY ET AL., DE-
FENDANTS IN ERROR.

Argued June 28, 1910—Decided November 14, 1910.

1. Under the circumstances, as presented before the trial court by
   the case made by the plaintiff, and which are recited sufficiently
   in the following opinion—*Held*, the question of the contributory
   negligence of the plaintiff's driver should have been submitted to
   the jury, and the judgment of nonsuit upon that ground was
   error.
2. To justify such nonsuit the contributory negligence of the plaint-
   iff must clearly appear, conclusively as a fact, or by necessary
   exclusive inference from the plaintiff's evidence, and where the
   evidence, when the plaintiff rests, leaves the question of the
   plaintiff's contributory negligence in doubt, the determination
   of that question must be submitted to the jury.

On error to the Supreme Court.

This was an action brought by Allen H. Brewster against
the New York Central and Hudson River Railroad Company,
West Shore Railroad Company and New York, Ontario and
Western Railway Company.

For the plaintiff in error, *Mackay & Mackay.*

For the defendants in error, *Vredenburgh, Wall & Carey.*

The opinion of the court was delivered by

VREDENBURGH, J.   A train of cars in the active operation
of the New York, Ontario and Western Railway Company,
one of the defendants, on the morning of the 19th of August,
1908, struck the plaintiff's team of horses and wagon, while
in charge of his driver, traveling along the public highway
near West Norwood, New Jersey, at the railroad crossing
there, causing a serious property loss, to recover which the
present action was brought.

At the trial, after the conclusion of the plaintiff's evidence, the judge, regarding it as presenting a court question, inferred—to use his expressions—that "the· prudence or care exercised by the driver of the team was not such as would exempt him from contributory negligence," and granted defendant's motion to nonsuit, taking the case from the jury.

At the place of the accident the highway was crossed (nearly at grade) by two (double) lines of rails forming two separate tracks, called in the evidence the northbound and southbound. A person driving from the direction pursued by the plaintiff's driver was obliged first to cross the former before reaching the latter tracks. For some three or four months previous to the accident, the driver had been hauling cordwood with the plaintiff's horses and wagon upon the highway from and to places which required him to drive across the defendant's tracks in order to reach his destination, and he had been making, for that period, about eight trips back and forth over the tracks, each day, with safety to himself and the property in his charge. On the occasion in ·question, the wagon was empty, except that it had upon it a woodrack with open sides that presented no obstruction to his sight, and contained nothing within calculated to produce any noise or to distract his hearing. While driving on the morning in question, he stood upon his feet on the floor of the wagon a distance from its front of about one-quarter of its length, his head being somewhat higher than the top of the woodrack. He had the horses well in hand, driving them at an ordinary walk, and, as he reached a point, which the evidence shows was the only place near the crossing from which he was able to see a train approaching on the southbound track (the track upon which he was struck), he stopped his horses and brought them to a standstill, called in the defendant's brief a "dead stop." The evidence shows that this stop placed the forefeet of the horses, if not actually upon, at least very close to the first rail of the northbound track. An eye-witness of the accident testified that the driver, after stopping and "holding to his team," tried to look up the track; "he looked both ways and turned his head both ways—both tracks;" the witness adds that "the

first thing he heard was the roar of the train; that the team jumped, * * * got frightened and jumped;" * * * that he did not see any more until he saw the horses jumping, and "with that the horses were on the track [the southbound] and the train hit them."

The same witness stated that "going in a westerly direction [the course pursued by the driver] you would have to have your horses on the northbound track before you could get a vision up [the direction from which the colliding train came] the track;" and upon being asked, "Why is it that you have to go that far before you can get this view?" answered, "Because the brush and woods and bank obstruct your view." Another witness, familiar with the locality, in answer to the question of how near you would be to the northbound track before you could see a train coming on the southbound, answered that you would have to be on the northbound track to see that; that "you cannot see it until it gets around the curve," that "it is that short cut right around the turn; you can't see it [the turn] unless you are on the track."

Accepting this testimony as given, as we now must, it is impossible, it seems to us, to attribute legal negligence to the driver under the circumstances, unless it can be affirmed that he was guilty of such negligence in attempting to exercise his right to cross at all at that place. The collision does not seem to have been the proximate or direct result of any voluntary act of the driver. The evidence is not that he started his horses, after stopping them, but that they jumped forward against his will while he was holding them. Whether the fact that they jumped into the path of the southbound train was a consequence he should reasonably have anticipated and guarded against, is a question peculiarly fit for the determination of a jury.

The point is made by the brief of the defendant in error that a legal inference should be drawn from the cross-examination of the same eye-witness to the effect that the driver must have had the train in full view "for at least sixteen seconds" before the accident. Upon being asked how long the team, when stopped, stood there, the witness answered

that he "didn't know exactly how long; maybe a few seconds; fifteen or twenty seconds." The brief, assuming that the speed of the train might have been, from the testimony, ninety miles an hour, or one hundred and thirty-two feet per second, and the speed of the walking horses two miles an hour, or three feet per second, and that the horses would then move from the point where they had stopped to the point where they were struck in about three and one-half seconds, and assuming that the driver could see up the track, from where they stood only half a mile, argues that he must have had the above-stated view of the train before the accident.

But passing for argument's sake, the evident uncertainty and unreliability of this cautiously-expressed opinion of the witness as to the precise number of seconds the team stopped at the northbound track, we only need notice that this calculation of the brief (based upon a comparison of the relative speed of train and horses) is founded upon a plain misconception of fact. It assumes that the frightened horses made no increase of speed when they jumped from the northbound over upon the southbound track. The calculation is based upon the horses' speed as having then been only at a walk of three feet per second, overlooking the sudden change of their speed from walking to jumping. Their speed, more probably, then increased to at least ten feet a second. The calculation (if entitled to any weight whatever), when corrected according to the probable fact, seems to me to demonstrate that the train must have been so close upon the driver when he first arrived at the point of his observation of the southbound track that his only safety lay in his keeping his horses at the "dead stop," to which they had been brought by him. This, I think, he tried, although ineffectually, to accomplish.

Under the circumstances recited above, it seems to us the question of his contributory negligence was for the jury. The long-accepted, as well as recently-affirmed, rules of law governing cases analogous in principle to the present, are that such question is regularly a matter of defence, and that the plaintiff is not required to prove its absence as a part of his

case; that there is no presumption of negligence upon the part of the highway traveler arising from the mere occurrence of his collision with the railroad train at its crossing over a highway, and that to justify a nonsuit his contributory negligence must clearly appear, conclusively as a fact, or by necessary exclusive inference from the plaintiff's evidence, and where the evidence, when the plaintiff rests, leaves the contributory negligence of the plaintiff in doubt, the determination of the question must be submitted to the jury. *Pennsylvania Railroad Co.* v. *Middleton*, 28 *Vroom* 154; *Danskin* v. *Pennsylvania Railroad Co.*, 50 *Id.* 526.

We conclude, therefore, that the nonsuit cannot be supported upon the ground on which it was placed by the trial court. This conclusion, however, does not make the consequent judgment erroneous in law if the ruling on which it was based be supportable upon some other ground. A ground other than contributory negligence was presented by each of the defendants, viz., that no negligence had been shown as to such defendant. An examination of the bill of exceptions satisfies us that this ground was well taken as to the New York Central and Hudson River Railroad Company, and as to the West Shore Railroad Company, but not as to the New York, Ontario and Western Railway Company, against which last-named defendant testimony as to the operation of its train was admitted that required the question of its negligence should be submitted to the jury.

The plaintiff in error is therefore entitled to a *venire de novo* as against the New York, Ontario and Western Railway Company, but not as against the other two defendants in error.

The judgment entered upon the nonsuit, being a single judgment, including a judgment for costs in favor of all the defendants, jointly, against the plaintiff, should be reversed, and a new judgment as of nonsuit, with costs, entered in favor of the New York Central and Hudson River Railroad Company, and the West Shore Railroad Company against the plaintiff, and a *venire de novo* awarded to the plaintiff as

against the New York, Ontario and Western Railway Company. *Emmons* v. *Stevane,* 48 *Vroom* 570.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Dill, Congdon, JJ. 13.