## Toledo, St. Louis and Western Railroad Company *v.* Lander, Administrator.

[No. 6,988. Filed June 9, 1911.]

1. RAILROADS.—*Crossing Accidents.—Death.—Beneficiaries —Complaint.*—A complaint against a railroad company for the negligent killing of decedent upon a highway crossing must allege the existence of the beneficiaries of such action, such question of beneficiaries being made an issuable fact by the filing of a general denial. p. 59.

2. RAILROADS.—*Crossing Accidents.—Death.—Beneficiaries.—Complaint.*—A complaint alleging that plaintiff's decedent was killed, "leaving surviving him as his only heirs at law and next of kin Cora Lander, his widow, and Vera Lander, and Lucile Lander, his infant children," shows his beneficiaries sufficiently "to enable a person of common understanding to know what is intended." p. 59.

3. RAILROADS.—*Crossing Accidents.—Death.—Beneficiaries.—Complaint.*—A complaint alleging that defendant railroad company negligently killed plaintiff's decedent, that he was an able-bodied man capable of earning five dollars a day, that the action was prosecuted for the benefit of decedent's widow and children who have suffered damage in a certain amount, sufficiently shows that defendant's negligence caused decedent's death and that the beneficiaries were damaged thereby. p. 60.

Toledo, etc., R. Co. *v.* Lander—48 Ind. App. 56.

4. RAILROADS. — *Negligence.* — *Contributory.*—*Verdict.*—A general verdict for the plaintiff, in an action against a railroad company for negligently killing decedent, constitutes a finding that the defendant was negligent and that decedent was free from contributory negligence. p. 61.

5. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Interrogatories.*—Answers to interrogatories that the decedent riding in an open buggy approached the railroad crossing at the rate of two miles an hour, that the defendant company ran its train at the rate of 40 miles an hour, that when decedent was 40, 30, 20 and 10 feet, respectively, from the crossing he could have seen the train 496, 455, 412 and 364 feet, respectively, that no whistle was sounded and no bell rung, and that buildings and a live engine standing nearby prevented his hearing the train, are not in irreconcilable conflict with a general verdict for the plaintiff. p. 61.

6. RAILROADS.—*Crossings.*—*Look and Listen Rule.*—It is the duty of a traveler approaching a railroad crossing to listen and look for approaching trains, to such extent as the surroundings permit, before attempting to cross, and a failure therein precludes a recovery on the ground of contributory negligence. p. 63.

7. RAILROADS. — *Duty.*—*Performance.*—*Presumptions.*—*Negligence.* —A traveler may properly assume that a railroad company will perform its duty in reference to the giving of the statutory signals, and its failure so to do constitutes negligence. p. 63.

8. RAILROADS.—*Failure to Give Signals.*—*Travelers.*—*Care Required.*—The failure of a railroad company to give the statutory signals at a highway crossing will not justify a traveler in failing to exercise care commensurate with the usual dangers of crossing the track. p. 63.

9. RAILROADS.—*Crossings.*—*Negligence.*—*Evidence.*—Evidence that defendant railroad company ran its train forty miles an hour, that the plaintiff's decedent was riding in a buggy and could have seen the approaching train three seconds before it killed him, that obstructions prevented his hearing the train, that no crossing signal was given, and that he turned his horse to avoid a collision, but the train struck the horse, killing decedent, sustains a verdict for the plaintiff. p. 64.

10. TRIAL.—*Imperfect Instructions.*—*Harmless Error.*—The giving of an instruction which is imperfect, but which in the light of other instructions given, could not have misled the jury, does not constitute reversible error. p. 65.

11. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Instructions.*—In an action by the personal representative of decedent who was killed by a railroad company on a highway crossing, an instruction that the plaintiff, on proof of defendant's neg-

ligence, should recover unless the decedent "contributed materially and directly to his death," is not erroneous.   p. 65.

12.  RAILROADS.—*Crossings.*—*Statutory   Duties.*—*Instructions.*—An instruction practically quoting the statute requiring railroad companies to equip locomotives with a whistle and a bell, prescribing the use thereof, and the penalty for the neglect thereof, and instructing the jury that if certain facts were found, the law would authorize a recovery by the plaintiff, is not bad because the penalty had reference to engineers, where such feature of the instruction was not afterwards referred to, and where there is nothing in the record to show that the jury was influenced against the company.   p. 65.

13.  RAILROADS.—*Damages.*—*Evidence.*—*Instructions.*—An instruction, in a personal injury case against a railroad company, which does not set out the elements of damages recoverable but limits such damages to the sum that the jury may believe that he "ought to recover," not exceeding the demand, when considered with other instructions limiting the recovery to the amount warranted by the evidence, is not misleading.   p. 66.

14.  TRIAL.—*Incomplete Instructions.*—*Duty of Objecting Party.*— Where an instruction is merely incomplete, the party complaining thereof should present to the trial judge a complete one. p. 66.

15.  TRIAL.—*Instructions.*—*Applicability.*—Instructions not applicable to the evidence should be refused.   p. 66.

16.  TRIAL.—*Instructions.*—*Duplication.*—Instructions should not be duplicated.   p. 66.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Thomas Lander, as administrator of the estate of Harry E. Lander, deceased, against the Toledo, St. Louis and Western Railroad Company.   From a judgment on a verdict for plaintiff for $5,000, defendant appeals.   *Affirmed.*

*Guenther & Clark, Clarence Brown, Charles A. Schmettau* and *Robert J. Loveland,* for appellant.

*St. John, Charles & Gemmill, Antrim & McClintic* and *Thomas B. Dicken,* for appellee.

MYERS, J.—This was an action by appellee against appellant to recover damages for the alleged negligent killing of Harry E. Lander at a grade crossing in the town of Van Buren.   There was a trial by jury, with a general verdict

and a judgment in favor of appellee. The jury with its general verdict returned answers to eighty-six interrogatories, on which appellant moved for judgment in its favor.

The errors assigned and presented call in question the action of the court in overruling a demurrer, for want of facts, to the first paragraph of the complaint, and in overruling appellant's motion for judgment on the answers of the jury to the interrogatories, and its motion for a new trial. The objections lodged against the first, are alike applicable to the second paragraph of the complaint.

The brief of appellant, omitting the caption, sets out a copy of the first paragraph of the complaint, but makes no mention of the second paragraph. The objections urged against the first paragraph are that it does not positively allege in traversable form (1) that decedent left surviving him a widow, children, or next of kin; (2) that it is not alleged that the beneficiaries were injured by reason of the acts of negligence charged; (3) that if damages to the beneficiaries are alleged, it does not connect the damages with the negligent acts of which complaint is made. We shall hereafter refer to this paragraph as the complaint.

It is true the complaint must allege the existence of persons to whom, under the statute, the damages inure. §285 Burns 1908, Acts 1899 p. 405. It is one of the issuable facts to be proved, and is put in issue by the general denial. *Chicago, etc., R. Co.* v. *Laporte* (1904), 33 Ind. App. 691. The complaint states "that Harry E. Lander died intestate, leaving surviving him as his only heirs at law and next of kin, Cora Lander, his widow, and Vera Lander and Lucile Lander, his infant children." Our code of civil procedure (§343 Burns 1908, subd. 2, §338 R. S. 1881) provides that a complaint shall contain "a statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." While

this provision of our code does not change the rule requiring material facts to be alleged directly, and not by way of recital, yet it would be exceedingly technical to hold that the quoted allegation of the complaint stated only by way of recital the fact that the decedent left a widow and two infant children. The allegation states more than one fact, but in plain and concise language. It might technically be subject to criticism, but not for any omission or defect that could have affected the substantial rights of appellant. The objection is not well taken. §407 Burns 1908, §398 R. S. 1881; *Louisville, etc., R. Co.* v. *Kendall* (1894), 138 Ind. 313; *Chicago, etc., R. Co.* v. *Laporte, supra.*

Appellant in support of the second and third objections, cites a number of cases in which definitions of actionable negligence are given, affirming the asserted weakness in the complaint before us. There is no contention that the complaint fails to charge negligence on the part of the appellant, or that such negligence was the proximate cause of the death of Harry E. Lander. Following these allegations, the age of Lander at the time of the accident is shown, and it is alleged that he was a healthy, able-bodied man, and capable of and was earning $5 a day. It is also stated that the action is prosecuted for the benefit of his said widow and infant children, who have suffered damages because of the death of said Lander in the sum of $10,000. The complaint states facts showing a cause of action against appellant, in favor of Lander, had he lived; but as he died from the effect of injuries received because of the negligence of appellant, the action which he might have maintained survived to his personal representative. Therefore, if the complaint was sufficient to show that it was appellant's failure to perform a duty it owed to decedent that proximately caused his death, the law steps in and names his widow and children, who, under the showing made in the complaint, are his beneficiaries and entitled to the benefit of any recovery had in

such action, on the theory that the death of the decedent, caused in the manner and form set forth in the complaint, as a natural sequence, resulted to the damage of those dependent upon him, they being within the class named in the statute. §285, *supra.* See, also, *Clore* v. *McIntire* (1889), 120 Ind. 262; *Korraday* v. *Lake Shore, etc., R. Co.* (1892), 131 Ind. 261.

Claim is made that the facts found by the jury in answer to interrogatories conclusively show that decedent's negligence contributed to his injury and death. The general verdict is a finding of actionable negligence on the part of appellant, and that decedent was free from contributory negligence.

The facts which are said to be in irreconcilable conflict with the general verdict, and relied on to support the charge of contributory negligence on the part of decedent, may be stated as follows: A few minutes after 7 o'clock on the morning of May 29, 1905, decedent, while riding in an open buggy, north on First street in the city of Peru, with two of his employes, one of whom was driving the horse drawing the vehicle, was killed at a grade crossing in a collision with one of appellant's west-bound passenger-trains. The railroad track from where it crosses First street eastward, makes a four-degree curve to the north. North of the main track, also crossing First street, was a side-track, on which, east of said crossing, stood a number of freight-cars. At the west line of First street, and on the south side of appellant's main track, a switch track connected, which extended west. On this switch track, at the time of said collision, and close to said crossing, headed east, stood one of appellant's locomotives, from which steam was escaping, making a loud noise. Main street connects with First street 427 feet south of said crossing, and from that point north to the crossing a view of the railroad track to the east, or of cars approaching from the east, was obstructed by buildings, and they could not be seen by

a traveler on First street south of the crossing, going north, until a point about forty feet south of the track was reached, from which point, on the morning of the accident, one looking east could see an approaching train for a distance of 496 feet; at a point thirty feet from the crossing a train 455 feet distant could be seen; twenty feet from the crossing a train could be seen 412 feet distant, and ten feet south of the crossing a train could be seen at a distance of 364 feet. Decedent approached the crossing traveling at the rate of two miles an hour, and for a distance of 700 feet appellant's train approached the crossing at an average speed of forty miles an hour, actually passing over the crossing at about thirty miles an hour. The engineer, as soon as he saw decedent's perilous position, attempted to check the speed of the train, but not in time to stop the engine before the accident. An instant before the collision, decedent was heard to say "Look out," the horse was turned to the left, and the accident happened. When decedent was forty and thirty feet south of the crossing, the train was not in sight. The whistle on the engine was sounded for Van Buren station, but it was not sounded for said First street crossing, nor was it sounded for the road crossing situated about one-half mile east of First street. The sounding of the whistle for the station could not have been heard by decedent, because of the buildings on the east side of First street, the rattle of said vehicle, and the noise of the escaping steam from the engine on the side-track west of First street. Decedent knew he was approaching the crossing, and was familiar with it. The train was scheduled to arrive at Van Buren at 7:05 o'clock a.m., but was from ten to fifteen minutes late. These facts, found by the jury, may be readily reconciled with the general verdict, supported by all intendments that might have been drawn from evidence admitted within the issues of the cause. The failure of the occupants to stop the horse in time to avert the accident

might have been explained so as clearly to warrant the jury in finding decedent free from contributory negligence. If this was done—and for the purposes of this motion we must assume that it was—then the court committed no error in overruling it.

In support of the motion for a new trial, it is insisted that the verdict is not sustained by sufficient evidence, and that the court erred in giving instructions five, eight, nine and eighteen, tendered by appellee, and in refusing to give instructions one and thirty-one tendered by appellant.

Appellant earnestly contends that the evidence in this case brings it within the rule that one who approaches a railroad crossing with which he is familiar, and attempts to cross without looking and listening for approaching trains, when it is possible to do so, is guilty of such contributory negligence as to preclude him from a recovery if he is injured. This rule is correct, for every person who is in possession of all his faculties must use them as an ordinarily careful and cautious person would to avoid injury from passing trains at highway crossings. *Lowden* v. *Pennsylvania Co.* (1908), 41 Ind. App. 614. It is his duty to look both ways and to listen for approaching trains, to such extent as the surroundings will permit of such precautions, before attempting to cross the track. *Mann* v. *Belt R., etc., Co.* (1891), 128 Ind. 138; *Ohio, etc., R. Co.* v. *Hill* (1889), 117 Ind. 56. He has a right to expect that the railroad company will perform its duty, and give the statutory crossing signals, and its failure to do so will be regarded as negligence. *Baltimore, etc., R. Co.* v. *Young* (1899), 153 Ind. 163; *Cleveland, etc., R. Co.* v. *Carey* (1904), 33 Ind. App. 275; *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312.

But such failure will not absolve the traveler from the exercise of care commensurate with the danger of which he is bound to take notice, by reason of the

fact that it is a railroad crossing, and that trains may pass at any time. *Evansville, etc., R. Co.* v. *Clements* (1904), 32 Ind. App. 659.

We have carefully examined the evidence in this case, from which we conclude that the jury might reasonably have found that decedent cautiously and prudently approached appellant's railroad track. If it could be said from the evidence that he knew the scheduled time for the arrival of the train at Van Buren, it does not appear that he knew it was ten or fifteen minutes late. As we have seen, he was bound to look not only to the east for approaching trains, but to the west as well. The standing engine on the side-track south of the main track and west of the crossing, partially obstructed the view of the track to the west. Decedent was about twelve or fourteen feet from the head of the horse, and the front feet of the horse were close to the south rail of the track when the occupants of the buggy discovered the approaching train. Immediately the driver turned the horse toward the west, but not in time to get it far enough from the track to prevent the engine from striking it in the side, and throwing the occupants from the buggy. There is evidence tending to show that the train that struck the decedent's horse was only about three seconds distant when first the decedent could have seen it had he been looking in that direction, but he and the other occupants of the buggy, were looking west for an approaching train. They had looked east when about eighteen feet from the track, and no moving train was in sight. The train that struck the horse could not be heard because of escaping steam from one of appellant's engines west of the crossing. They heard no signal, and none was given for First street crossing. The evidence is conflicting as to whether a signal was given for a highway crossing, known as Corey's crossing, 2,097 feet east of First street crossing, and we may assume it was not. No signals were given after passing Corey's crossing. The evidence is voluminous, and

we shall not attempt to refer to all the facts it tends to prove, favorable to the general verdict. From all the facts and circumstances disclosed by the evidence, the question of decedent's negligence was for the jury.

It is next insisted that instruction five, tendered by appellee and given to the jury, was erroneous and harmful to appellant. This instruction is criticised on the ground that it permits a recovery upon proof of negligent acts not alleged in the complaint; also for the reason that it authorizes plaintiff to recover, unless decedent "contributed materially and directly to his death." The instruction was not carefully prepared, and is not approved, for the reason that it contains incomplete statements of the law; but when considered with other instructions in the case, which explicitly inform the jury as to the law referred to in this instruction, we are convinced that the jury was not misled, nor the plaintiff harmed thereby. The word "materially" as used in this instruction has been many times held by the Supreme Court and this court not to render the instruction erroneous. We cannot hold to the contrary as it would contravene a ruling precedent of the Supreme Court. *Citizens St. R. Co.* v. *Twiname* (1887), 111 Ind. 587; *Toledo, etc., R. Co.* v. *Goddard* (1865), 25 Ind. 185; *Pennsylvania Co.* v. *Sinclair* (1878), 62 Ind. 301; *Citizens St. R. Co.* v. *Albright* (1896), 14 Ind. App. 433; *Union Traction Co.* v. *Vandercook* (1904), 32 Ind. App. 621; *Indianapolis, etc., Transit Co.* v. *Edwards* (1905), 36 Ind. App. 202.

Instruction nine, after practically quoting the statute requiring all railroad companies operating railroads in this State to equip their locomotives with a whistle and a bell, and prescribing the duties of the engineer with reference to their use, and the penalty for the neglect of such duties, continues by telling the jury if it finds certain facts to be true, then it would be au-

thorized to find for the plaintiff. This instruction is criticized on the ground that it is erroneous because it refers to the penalty of the statute with reference to engineers. The objection is not without some merit, but as this feature of the instruction was not afterwards referred to or emphasized, and nothing appearing in the record to indicate that it in any manner influenced the jury as against the company, the only defendant, we are not persuaded that it created a prejudice in the minds of the jurors which led them to an incorrect verdict

Instruction eighteen is objected to on the ground that it failed to inform the jury as to the elements of damage it should take into consideration in determining the amount of plaintiff's recovery. While the jury should be instructed as to the legal measure of damages, and not be left to assess plaintiff's "damages at such sum as you may believe he ought to recover, not exceeding $10,000," yet when this instruction is taken in connection with another instruction which limits the plaintiff's recovery to the evidence in the case, it does not present reversible error. If appellant desired a more specific instruction as to the measure of damages, it should have asked it.

Instruction one tendered by appellant and refused by the court directed the jury to find for defendant. The evidence did not warrant the giving of this instruction.

Instruction thirty-one, refused by the court, was fully covered by other instructions tendered by appellant, and by the court given to the jury.

Finding no reversible error in the record, the judgment is affirmed.