[Civil No. 1757. Filed June 3, 1920.]

[190 Pac. 88.]

INSPIRATION CONSOLIDATED COPPER COMPANY, a Corporation, Appellant, v. EMILY CONWELL, in Her Capacity as Administratrix of the Estate of LAWRENCE CONWELL, Deceased, Appellee.

1. MASTER AND SERVANT—COMPENSATION ACT DOES NOT PRECLUDE RECOVERY IN ACTION FOR DEATH OF SERVANT CAUSED BY NEGLIGENCE. The Compensation Act does not preclude recovery by representatives of the deceased employee for wrongful death under Lord Campbell's Act, Civil Code of 1913, paragraph 3372, though the Compensation Act was applicable to the employment.

2. COURTS—RULE OF DECISION OUGHT NOT TO BE DISTURBED.—A rule, once deliberately adopted and declared, ought not to be disturbed except for very urgent reasons and upon a clear manifestation of error.

3. MASTER AND SERVANT—EVIDENCE HELD TO SHOW DECEASED MOTORMAN WAS THROWN FROM ORE-CAR BY DERAILING.—Evidence that a mine motorman was found between the motor car and the car following, which had been derailed, causing a severe jolt of the train, *held* to warrant jury in inferring, not merely guessing, that he was thrown from his seat by the jolt.

4. NEGLIGENCE—"PROXIMATE CAUSE" DEFINED.—The cause is proximate without which the accident would not have happened.

5. NEGLIGENCE—PROXIMATE CAUSE QUESTION FOR JURY.—Proximate cause is a question of fact for the jury if there is substantial evidence from which it may be reasonably deduced that the negli-

---

5. For cases on respective functions of court and jury with respect to question of proximate cause, see note in Ann. Cas. 1913B, 351.

gence shown was the proximate cause; that is, proximate cause may be determined from circumstantial evidence.

6. MASTER AND SERVANT—EVIDENCE HELD TO SHOW DERAILING OF ORE-CARS WAS PROXIMATELY CAUSED BY DEFECTIVE TRACK.—In an action for death of a mine motorman, evidence that the track was defective and the ore-cars following the motor were derailed *held* to show that the defective track was the cause of the derailment.

7. APPEAL AND ERROR—FINDING OF PROXIMATE CAUSE NOT DISTURBED, THOUGH EVIDENCE WARRANTING INFERENCE WAS CONTRADICTED.— Where there was evidence introduced by plaintiff showing a defective condition of the track sufficient to warrant the jury in inferring that such condition was the cause of the accident, the jury's finding to that effect will not be disturbed, though such evidence was strongly contradicted by defendant's evidence.

8. APPEAL AND ERROR—CONSTITUTION MAKES JURY FINDING AGAINST ASSUMPTION OF RISK CONCLUSIVE.—Constitution, article 18, section 5, making contributory negligence and assumption of risk in all cases questions of fact to be left to the jury, makes verdict of the jury conclusive on appeal, though the evidence is such that in the absence of the provision the court would find assumption of risk as a matter of law.

9. DEATH—SEVENTEEN THOUSAND DOLLARS FOR DEATH OF HUSBAND, A MINE MOTORMAN, HELD NOT EXCESSIVE.—A verdict allowing $17,000 damages for the death of a mine motorman, thirty-two years old, who left a wife and two minor children, and who at the time of his death was earning $165 a month and was considering a proposition to enter business whereby he would probably make more, is not so excessive as to show that the jury was influenced by passion or prejudice.

APPEAL from a judgment of the Superior Court of the County of Gila.   G. W. Shute, Judge.   Affirmed.

STATEMENT OF FACTS.

This is an action for damages for the death of Lawrence Conwell, alleged to have been caused by the negligence of the defendant.   The plaintiff is the administratrix of Conwell's estate.   Conwell was a motorman in the service of the defendant, and was killed by the derailment of a train of ore-cars.   The

9. On excessiveness of verdicts in actions for personal injuries other than death, see notes in L. R. A. 1915F, 30; 16 Ann. Cas. 8; Ann. Cas. 1913A, 1361.

plaintiff claimed damages in the sum of $25,000. The defendant interposed a general demurrer to the complaint, and pleaded both in abatement and in bar that the employment of Conwell was under the ''Compensation Act,'' and that in consequence the ''Compensation Act'' furnished the exclusive measure of the liability of the defendant. The court overruled the demurrer, and on motion of the plaintiff struck out both pleas. The action was tried on the complaint and the answer thereto, in which the defendant, pleaded negligence on the part of the deceased Conwell, assumption of risk, and a general denial. The jury returned a verdict for plaintiff in the sum of $17,000. A motion for a new trial was made and overruled by operation of law. The defendant appeals, and assigns numerous errors.

Mr. E. W. Rice, for Appellant.

Mr. Norman J. Johnson and Mr. H. M. Foster, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— The defendant's assignments of error Nos. 1, 2, 3 and 10 are based upon the action of the court in overruling the general demurrer to the complaint, striking out pleas in abatement and in bar of the action, and the denial of the defendant's request for an instructed verdict. These matters were all predicated upon the proposition that the Compensation Act (chapter 7, tit. 14, Rev. Stats. 1913) was applicable, and governed the employment of the deceased, Conwell, and that it measured the liability of the defendant and precluded plaintiff from instituting or maintaining the present action. The exact question was presented for decision, and has been considered and decided in this state adversely to the defendant's contention in *Behringer, Admx., etc.,* v. *Inspiration Con-*

*solidated Copper Co.,* 17 Ariz. 232, 149 Pac. 1065.
We are pressed in a very elaborate argument to re-
consider and overrule this decision. The case con-
strues the statute touching the right of a personal
representative to sue for wrongful death, and holds
that the "Compensation Act" does not restrict or
limit the right of a personal representative to resort
to Lord Campbell's Act (paragraph 3372, Rev. Stats.
1913). It was decided July 7, 1915, and has been ac-
cepted and acted upon as correct ever since. The ar-
gument fails to convince us that the opinion violates
any principle of law, or works any injustice, and we
must consider the question as at rest. When a rule
has once been deliberately adopted and declared, it
ought not to be disturbed except for very urgent rea-
sons, and upon a clear manifestation of error. We
adhere to the ruling in the Behringer case.

Assignments Nos. 8, 9, 10, 13a, 13b, 13c, 13e, 13f,
13g, 14 and 15 raise the contention that the verdict
and judgment are not sustained by the evidence:
First, because there is no proof of proximate cause;
and, second, because it is clear that the deceased,
Conwell, assumed the risks. The undisputed facts of
the case are that the deceased was engaged at work
for the defendant, driving a motor to which was at-
tached fifteen cars loaded with ore on the 400-foot
level in the defendant's mine. Conwell, when driving
the motor, rode on the right-hand side near the rear.
While upon a curve and going at a speed of four or
five miles an hour, two of the cars immediately in the
rear of the motor jumped the track on the right-hand
side, one of the cars striking and scraping the tim-
ber standing on the side of the track for a distance
of about ten feet. The motor remained on the track.
One or two jolts or jars of the cars occurred, one
being so violent that Conwell's helper, who was rid-
ing on the motor in front, was compelled to hold on

to a rod very tightly so as not to lose his seat. When the cars stopped, Conwell was found behind the motorman's seat between the motor and the first car, holding on to the seat. His leg had been dragged along the right-hand side of the track; one of the witnesses put his arms around Conwell to assist him, and found that he was crushed; he was bleeding at the mouth, and died in about ten minutes. No one actually saw just how the accident occurred.

It is argued that in the absence of direct evidence it was mere guess or speculation as to how Conwell came to his death, and for that reason the plaintiff could not recover. It is suggested that Conwell might have been standing up and accidentally overbalanced, or that a chain might have dropped off the pan on the motor, and he might have reached from his seat to the other side between the safety post and the projecting rib on the first car to rescue this chain when it was engaged by the wheel of the car, and the car was thereby derailed, pinning him between the car and the safety post, and that if his death thus occurred the liability of the defendant would not be involved. We are not at all impressed with this argument. Conceding, as we do, that it was not for the jury to guess or speculate as to the cause of the accident, we think it is far more reasonable to suppose, and the jury, in our opinion, might well have inferred, that the jolt of the derailment caused Conwell to lose his seat and fall between the car and the motor, or between the safety post and the car, and that he was thus crushed and killed. The jolt was so violent as to compel Conwell's helper to hold on very tightly to avoid losing his seat, and it seems reasonable to infer that the same jolt unseated Conwell. In our opinion, the evidence was sufficient to send the case to the jury upon this point, and we think that the jury was warranted in finding, as they must necessarily have done,

that Conwell was killed by the derailment of the cars without any intervening cause such as suggested by the defendant.

The material question is, What was the proximate cause of the accident? It must be conceded that unless the bad condition of the track as alleged in the complaint was the efficient and dominant cause of the derailment of the cars, the plaintiff had no case. That cause is proximate without which the accident would not have happened. *Railroad Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256 (see also, Rose's U. S. Notes). Proximate cause is a question of fact, and a question for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was the proximate cause of the injury complained of. In short, proximate cause may be determined from circumstantial evidence. *Railroad Co.* v. *Kellogg, supra; Weleetka Cotton Oil Co.* v. *Brookshire* (Okl.), 166 Pac. 408; *Missouri, K. & T. Ry. Co.* v. *Minor,* 75 Okl. 10, 181 Pac. 142. The evidence with reference to the condition of the track at the place of derailment tends to show that it was in a flagrantly defective condition. Two accidents had occurred at the same place prior to the one in question. The ground was muddy, soft and yielding under the track. The rails would go up and down when the motor was passing; the water being forced from under the ties. The rail on the right-hand side of the curve of the track was lower than on the left, and when the motor was passing, it would swing two ways; one movement went up and one went sideways, giving a lurch and jerk. There was also evidence that there was a joint in the rail at the softest place in the track where the accident occurred, and that at that point the track gave way more than at other points. It is not considered necessary to enter into a lengthy discussion for the purpose of showing that

the evidence of the bad condition of the track was
sufficient to carry the case to the jury upon the point
that the derailment would not have occurred had it
not been for this bad condition. The inference seems
irresistible that such was the case.

It is true that the evidence tending to show that the
defendant was negligent in permitting the bad condi-
tion of the track to exist was strongly contradicted
by the witnesses for the defendant. But it is not
denied that there was a very material conflict in
the testimony upon that point. Thus, the question
whether the defendant's negligence was the proximate
cause of the disaster became a question for the jury.
We will not disturb a verdict where the evidence is
conflicting.

As to the assumption of risk, it must be admitted
that the uncontradicted evidence proves that Conwell,
for some time prior to the accident, had actual and
positive knowledge of the bad condition of the track,
and understood and appreciated the danger arising
from running the ore-cars over it. Were it not for
article 18, section 5, of the state Constitution, which
provides that "the defense of contributory negligence
or of assumption of risk shall in all cases whatsoever
be a question of fact, and shall, at all times, be left
to the jury," it would have been the duty of the trial
court to have granted the defendant a new trial on
the ground that the verdict was contrary to the evi-
dence on the question of the assumption of risk. We
are therefore called upon to determine for the first
time in this jurisdiction, the scope and effect of the
constitutional provision. The language of the provi-
sion is plain and unambiguous, and to our minds
clearly indicates that the power or duty to finally
and conclusively settle the question of contributory
negligence or assumption of risk is, by its terms,
transferred from the court to the jury. If this is not

the force and effect of the provision, we can conceive of no reason why the framers of the Constitution should have adopted the measure.  We think that the evident purpose and intent of the provision is to make the jury the sole arbiter of the existence or nonexistence of contributory negligence or assumption of risk in all actions for personal injuries.  The same question arose in the case of Eva Roberts Cole, Administratrix of the Estate of A. W. Roberts, Deceased, et al., v. Jacob M. Dickinson, Receiver of the Chicago, Rock Island & Pacific Ry. Co., 177 Pac. 570, and the Supreme Court of Oklahoma, construing the section of the Constitution of that state, which is exactly like ours, held, in effect, that the verdict of the jury on the question of contributory negligence or assumption of risk was conclusively upon the court.  The syllabus of the case as prepared by the court is as follows:

"Article 23, section 6, of the Constitution of Oklahoma is not merely declaratory of the common law, but requires that the defense of contributory negligence and assumption of risk as to questions of fact in all cases whatsoever shall at all times be left to the jury, and the finding of the jury upon these defenses is conclusive upon the court."

The case was carried to the United States Supreme Court on writ of error (*Chicago, R. I. & P. R. Co.* v. *Eva Roberts Cole, etc.,* reported in 251 U. S. 54, 64 L. Ed. 133, 40 Sup. Ct. Rep. 68), and was there affirmed.  Mr. Justice HOLMES, speaking for the court, said:

"As it [state] may confer legislative and judicial powers upon a commission not known to the common law (*Prentis* v. *Atlanta Coast Line Co.,* 211 U. S. 210, 53 L. Ed. 150, 29 Sup. Ct. Rep. 67), it may confer larger powers upon a jury than those that generally prevail.  Provisions making the jury judges of the law as well as of the facts in proceedings for libel are common to England and some of the states, and

the controversy with regard to their powers in matters of law more generally as illustrated in *Sparf* v. *United States,* 156 U. S. 51, 715, 10 Am. Crim. Rep. 168, 30 L. Ed. 343, 15 Sup. Ct. Rep. 273, and *Georgia* v. *Brailsford,* 3 Dall. 1, 4, 1 L. Ed. 483 (see also, Rose's U. S. Notes), shows that the notion is not a novelty. In the present instance the plaintiff in error cannot complain that its chance to prevail upon a certain ground is diminished when the ground might have been altogether removed.''

Since the verdict of the jury upon the question of assumption of risk was conclusive upon the court, it was not error to deny the defendant's motion for a new trial.

Assignment 13a is directed at the amount of the verdict as being excessive and unreasonable, and that it was rendered under the influence of passion and prejudice. The verdict was for $17,000. We have discovered nothing in the record tending to disclose anything which happened during the trial from which it can be inferred that the jury might have been influenced by passion or prejudice in arriving at their verdict. The deceased, Conwell, was a married man, the father of two minor children, and at the time of his death was thirty-two years old. His life expectancy, as proven by the American Experience Tables of Mortality, was thirty-three and ninety-three one-hundredths years. He was in robust health; industrious and attentive to business; he had specialized in glass-making as a stencil-cutter or pattern-maker for the molding of glass, making figures on glass, etc., and had a proposition in view at the time of his death wherein he would go into business for himself in sand glass, cutting stencils or patterns, whereby he would probably make more than he would as a mere wage-earner. He owned his own home, and at the time of his death had saved about $400 out of his wages. The evidence showed that he was saving and laying aside a considerable portion of his wages every month. As a mo-

torman he was earning, at the time of his death, approximately $165 per month. If the deceased had lived for the full period of his expectancy, and had continued to earn $165 monthly, as at the time of his death, he would have been approximately sixty-five years old, and would have earned approximately $65,-000. In view of these facts we do not think it can be said that the verdict was excessive. As a general rule, the amount of damages recoverable in an action for death by wrongful act is a matter peculiarly within the province of the jury, and their finding will not be set aside as excessive, unless it is the result of passion or prejudice. *De Amado* v. *Friedman,* 11 Ariz. 56, 89 Pac. 588; *Southern Pac. Co.* v. *Wilson,* 10 Ariz. 162, 85 Pac. 401.

In *McGrory* v. *Pacific Elec. R. Co.,* 22 Cal. App. 671, 136 Pac. 303, it is said:

"In order to warrant a court in setting aside a verdict for damages on the ground that too great a sum of money has been awarded, the sum must be so disproportionate to the result of any reasonable computation, based on the facts shown in evidence, as to suggest at once that the jury must have been influenced by some factor, improper for them to consider, such as their sympathy for the plaintiff or their bias or prejudice against the defendant."

We have discussed substantially all the points raised by the defendant which we deem vital, or requiring extended discussion. Other assignments relate to the introduction of certain testimony over the objections of the defendant, and submitting certain instructions to the jury. We have considered these assignments, but, in our opinion, they present no sufficient reason for reversing the judgment of the lower court. The judgment and order appealed from should be affirmed, and it is so ordered.

CUNNINGHAM, C. J., and ROSS, J., concur.