[Civil No. 1837.   Filed July 5, 1921.]

[199 Pac. 116.]

# JAMES C. DAVIS, as Agent Under Section 206, Transportation Act of 1920, JOHN B. GANDY and LAWRENCE A. GAMOTIS, Appellants, v. WM. E. BOGGS, Administrator of the Estate of JOHN S. WILLIAMS, Deceased, Appellee.

1. RAILROADS—COMPANY MUST RUN TRAIN AT REASONABLE SPEED AND GIVE CROSSING SIGNALS.—Where a railroad knew of the existence of a highway crossing, it was bound to apprehend that travelers on the highway might be there about to cross or in the act of crossing as the train approached, and it was under duty to run its trains at a reasonable rate of speed, giving reasonable signals of its approach thereto.

2. RAILROADS—COMPANY COULD NOT RELY ON NOISE OF TRAIN.—Where at a railroad crossing the wind was blowing briskly away from an automobile and against an approaching train, and the air was filled with dust, tending to obscure the vision, the railroad could not rely wholly on the noise of its train as an adequate warning to the automobile, nor could the engineer reasonably assume that the driver of the automobile would see the train in time to avoid collision.

3. EVIDENCE—NEGATIVE TESTIMONY THAT BELL NOT RUNG OR WHISTLE SOUNDED AT CROSSING ADMISSIBLE.—In an action against a railroad for death of an automobile driver in a crossing collision, negative testimony of the witnesses for plaintiff administrator that the bell was not rung and the whistle not sounded as the train approached the crossing was admissible.

4. TRIAL—VERDICT NOT DIRECTED ON CONFLICTING EVIDENCE.—A verdict will not be directed in a case where the evidence is conflicting, or where, on all the facts and circumstances proven, there is room for fair and reasonable men to differ in their conclusions.

5. RAILROADS—PROXIMATE CAUSE OF CROSSING ACCIDENT JURY QUESTION.—In an action against a railroad for death of an automobile driver in a crossing collision, it was for the jury to say whether the negligence of the railroad found by them was the proximate cause of the accident.

6. RAILROADS—NEGLIGENCE IN OPERATING TRAIN AT CROSSING JURY QUESTION.—In an action against a railroad for death of an automobile driver in a crossing collision, whether defendant railroad was negligent in operating its train *held* for the jury under the evidence.

7. RAILROADS—AUTOMOBILE DRIVER'S CONTRIBUTORY NEGLIGENCE QUESTION OF FACT UNDER CONSTITUTION.—Constitution, article 18, section 5, makes the defense of contributory negligence a question of fact in all cases, as an action against a railroad for death of an automobile driver in a crossing collision, despite defendant railroad's claim that plaintiff's intestate did not stop, look, and listen, but drove upon the track when the train was approaching in full view and was killed.

8. RAILROADS — CONTRIBUTORY NEGLIGENCE OF AUTOMOBILE DRIVER KILLED MATTER OF DEFENSE.—In an action against a railroad for death of an automobile driver in a crossing collision, contributory negligence being a matter of defense, plaintiff administrator was not required to prove its absence as a part of his case by showing that his decedent stopped to look or listen before attempting to cross the track; the law presuming decedent was in the exercise of due care until the contrary is made to appear.

9. RAILROADS—NO DISTANCE FOR STOPPING, LOOKING, AND LISTENING PRESCRIBED.—The law does not prescribe any particular distance from a railroad track at which a traveler shall stop, look, and listen.

10. RAILROADS—INSTRUCTION ON CROSSING SIGNALS JUSTIFIED.—In an action against a railroad for the death of an automobile driver in a crossing collision where there was evidence tending to show that the highway had long been used by the public, and that the crossing was long known and recognized by the railroad company as a public railroad crossing, an instruction was justified that it is negligence for a railroad company before crossing any traveled public highway to omit to give warning signals.

11. RAILROADS—STATUTORY DUTY TO GIVE CROSSING SIGNALS EXTENDS TO COMPANY.—The duty imposed by Penal Code of 1913, section 397, that every person in charge of a locomotive engine who before crossing any traveled public way omits to give warning signals is guilty of a misdemeanor extends to the company as well as to the engineer.

12. RAILROADS — AUTOMOBILE DRIVER FAILING TO STOP, LOOK, AND LISTEN NOT NEGLIGENT AS MATTER OF LAW.—Even though the automobile driver killed in a crossing collision with defendant railroad's locomotive did not stop, look, and listen before going on the crossing, the omission did not in itself make him guilty of contributory negligence as a matter of law; the test being

12. On care required of driver of automobile as to stopping, looking, and listening before crossing railroad track, see notes in Ann. Cas. 1913B, 682; Ann. Cas. 1915B, 678; 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

On failure to stop, look, and listen before crossing railroad track, as negligence, see note in 1 A. L. R. 203.

whether under all the circumstances he exercised ordinary care for his own safety.

13. RAILROADS — INSTRUCTION ON HEADLIGHT PROPER. — In an action against a railroad for death of an automobile driver in a collision at a crossing, under the circumstances, an instruction based on defendant railroad's alleged failure to have the headlight of its engine burning at the time of the accident *held* proper.

14. RAILROADS—INSTRUCTION ON DUTY OF TRAVELER TO STOP HELD PROPER.—An instruction that one approaching a railroad track cannot solely rely upon the fact that a whistle would be sounded or a bell rung, or that lights would be displayed, but must so approach the track that, even though signals were not given, he could stop in time to avoid danger, *held* all that defendant railroad was entitled to on the subject.

15. TRIAL—INSTRUCTION AS TO RELATIVE WEIGHT OF NEGATIVE AND POSITIVE TESTIMONY HELD PROPERLY REFUSED.—In an action against a railroad for death of an automobile driver in collision at a crossing, where there was some testimony from witnesses who were paying attention to the matter that the whistle on the locomotive was not sounded and the bell not rung, instruction requested by defendant railroad on the comparative weight and value of the positive and negative testimony as to the ringing of the bell and sounding of the whistle on the locomotive was properly refused.

16. RAILROADS—AUTOMOBILE DRIVER NOT UNDER ABSOLUTE DUTY TO STOP, LOOK, AND LISTEN.—It cannot be affirmed as a matter of law that there is an absolute duty on the driver of an automobile to stop, look, and listen in all cases before he attempts to cross a railroad track.

17. RAILROADS—INSTRUCTION ON RIGHT TO CROSS TRACK ERRONEOUS.— In an action for death of an automobile driver in a crossing collision, an instruction that, if decedent was trying to cross ahead of the train, his administrator could not recover, is erroneous, and imposes on the driver the whole duty of avoiding the collision.

APPEAL from a judgment of the Superior Court of the County of Pinal. O. J. Baughn, Judge. Affirmed.

Mr. F. M. Hartman, for Appellants.

Messrs. Flanigan & Murry, for Appellee.

BAKER, J.—Error is assigned to the denial of the defendant's motion for an instructed verdict in

its favor. John S. Williams, plaintiff's intestate, was struck and killed by the engine of the defendant's passenger train, on the evening of May 5, 1918, about 8:24 P. M., as he was crossing the railroad track, going north, at a certain highway crossing within the limits of the incorporated town of Casa Grande. The train was approaching and entering the town, coming from the east, and was proceeding in a westerly direction on a slight down grade. The deceased was driving an Overland automobile. His wife and three children were with him in the machine at the time. They were returning from a short pleasure trip. They were all killed. The fireman on the engine testified that he first saw the automobile and its occupants "about somewhere around 50 feet from the crossing; not a soul was looking toward me." He estimated the automobile was traveling five or six miles per hour. He at once warned the engineer, who threw on the full emergency brakes, but it was too late to stop the train and avoid the accident. No claim is made that there is room for the application of the last clear chance doctrine. The engineer of the train, whose duty it was to be on the lookout ahead said he did not see the automobile until it was about to go upon the crossing. The automobile had passed along the road which ran almost parallel with the railroad track and about 150 feet therefrom. The road gradually turned toward the crossing at a point about fifty feet therefrom. The highway and crossing had long been used by the public. In fact, the defendant had recognized it as a public crossing by maintaining a sign there indicating a railroad crossing. The negligence alleged in the complaint is that the defendant was operating the train at a dangerous and excessive rate of speed, and that it failed to give adequate signals or warnings of the approach of the train to the crossing.

The primary question in the case is: Was the defendant railroad company, or its employees, guilty of negligence, which was the proximate cause of the accident? Was there evidence justifying the finding of such negligence? The contention of the plaintiff was, and is, that the defendant was negligent in running its train under the circumstances and conditions known to it, at an excessive rate of speed, and that it failed to give adequate signals or warnings of its approach. Upon each one of these points there is a sharp conflict in the evidence. Quite a number of witnesses were introduced by both parties, as to whether the train gave signals of warning as it approached the crossing, and the speed of the train at the time, with the usual result, some witnesses testifying one way, and some the other. The defendant well knew of the existence of the highway crossing where the accident happened and was bound to apprehend that travelers on the highway might be there about to cross or in the act of crossing as its train approached. Under such circumstances the law imposed upon the railroad company the duty or obligation to run its train at a reasonable rate of speed as it approached the crossing, giving reasonable signals of its approach so that such travelers might keep off the track if approaching it. We understand this to be the established rule of law. 33 Cyc. 922; 2 Thompson, Commentaries on the Law of Negligence, par. 1552; 22 R. C. L., pp. 987–989; *Baltimore & Ohio R. R. Co.* v. *Griffith,* 159 U. S. 603–608, 609, 40 L. Ed. 274, 16 Sup. Ct. Rep. 105; *Continental Improvement Co.* v. *Stead,* 95 U. S. 161–169, 24 L. Ed. 403; *Texas & Pacific Ry. Co.* v. *Gentry,* 163 U. S. 353, 41 L. Ed. 186, 16 Sup. Ct. Rep. 1104; *Delaware, Lackawanna etc. R. R.* v. *Converse,* 139 U. S. 469–472, 35 L. Ed. 213, 11 Sup. Ct. Rep. 569 (see, also, Rose's U. S. Notes).

Mr. Justice BRADLEY, in *Continental Improvement Co.* v. *Stead, supra,* said:

"If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care on the part of those traveling on the other to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. . . . On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. . . . "

Mr. Justice BRADLEY further said:

"The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds and other noises."

The evidence for the plaintiff, though in conflict with the evidence for the defendant upon the point, tends to show that at the time of the accident the wind was blowing briskly away from the automobile and against the approaching train. The air was filled with dust tending to obscure the vision. The direction of the wind was known, or ought to have been known, to the engineer of the approaching locomotive. The atmospheric conditions were known, or ought to have been known, to him. Under these circumstances

the defendant could not rely wholly on the noise of its train as an adequate warning, nor on the mere ringing of the bell or sounding of the whistle, because the wind might carry these sounds away from Mr. Williams. Neither could the engineer reasonably assume that Mr. Williams would see the train in time to avoid the collision, because his vision might be obstructed by the dust which filled the air. The speed of the train was therefore critical, and it was the duty of the engineer to so control it as not to render unavailing the warning of the bell and whistle, if any was given.

The witnesses for the plaintiff placed the speed of the train at the time of the accident at from forty to fifty miles per hour. Witnesses for the defendant placed the speed at from fifteen to twenty-five miles per hour. It was for the jury to settle the conflict. Perhaps upon no other subject will there be found a greater variance by honest witnesses testifying as to the speed of a moving train. The value of testimony on such a point depends largely on the intelligence of the witness, his experience in such matters, his opportunity for seeing and observing, and whether or not his attention was called at the time to the speed of the train. The physical facts attending the accident afford some evidence of the high rate of speed at which the train was going. The automobile, weighing about 2,500 or 2,600 pounds, was picked up by the engine and projected a distance of about seventy-four feet through the air before touching the ground again. Mr. Williams was hurled about 110 feet, his wife ninety-four and one-half feet, and the children about 100 feet. The engine drawing the train proceeded a distance of about 1,000 feet after striking the automobile before it stopped, although the engineer threw on the full emergency brakes just before or at the time of the accident.

These facts were for the consideration of the jury in determining the speed of the train and to some extent corroborated the evidence of the plaintiff as to the speed.

So the testimony is in serious conflict as to the giving of signals by the train on its approach to the crossing. Witnesses for the defendant testified that the whistle was blown on approaching the crossing and the bell was rung. Many of defendant's witnesses, not all, were in the employment of the defendant. Their interest, if any, was for the consideration of the jury. Witnesses for the plaintiff paying attention testified that no whistle was sounded and no bell was rung. They do not seem to have had any interest in the result. It was for the jury to settle this conflict. True, the evidence upon the point on the part of the plaintiff was in some respects negative in character, but it was admissible and its weight and value was for the jury. Upon the point it was said in the case of *Menard* v. *Boston & Maine R. R.*, 150 Mass. 386, 23 N. E. 214:

"Ordinarily all that a witness can say, in such a case, when called to prove that a bell was not rung, is that he did not hear it. Such a statement, with no accompanying facts, is merely negative, and of no value as evidence. But attending circumstances may be shown which make the statement strong affirmative evidence. It may appear that all the attention of which the witness was capable was concentrated on the effort to ascertain whether the bell was rung, and his failure to hear it could only have been because it made no sound. A witness may be in any conceivable attitude of attention or inattention, which will give his evidence value, or leave it with little or no weight."

And it may be said of the facts of this case, as said in *Northern Pac. Ry. Co.* v. *Freeman,* 174 U. S. 379, 43 L. Ed. 1014, 19 Sup. Ct. Rep. 763:

"As the majority of plaintiffs' witnesses were so located that they would probably have heard the whistle if it had been blown, there was a conflict of testimony with respect to defendants' negligence, which was properly left to the jury."

It necessarily follows from what has been said that it was not error for the court to deny the motion of the defendant for an instructed verdict. We have often decided that a verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions. Of course, it was for the jury to say whether the negligence found was the proximate cause of the accident. *Milwaukee & St. P. R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256 (see, also, Rose's U. S. Notes); *Inspiration Consolidated Copper Co.* v. *Conwell,* 21 Ariz. 480, 190 Pac. 88.

It is contended by the defendant that the plaintiff cannot recover, because the evidence shows that his intestate did not stop, look, and listen, but drove upon the railroad track when the train was approaching in full view, and was killed. Our Constitution says:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall at all times, be left to the jury." Const., art. 18, § 5.

This provision was under review in the case of *Inspiration Consolidated Copper Co.* v. *Conwell,* 21 Ariz. 480, 190 Pac. 88, and we there said:

"We are therefore called upon to determine for the first time in this jurisdiction the scope and effect of the constitutional provision. The language of the provision is plain and unambiguous, and to our minds clearly indicates that the power or duty to finally and conclusively settle the question of contributory negligence or assumption of risk is by its terms transferred from the court to the jury. If this is not the force and effect of the provision, we can conceive of

no reason why the framers of the Constitution should have adopted the measure. We think that the evident purpose and intent of the provision is to make the jury the sole arbiter of the existence or non-existence of contributory negligence or assumption of risk in all actions for personal injuries.''

We cited in support of these views the case of *Dickinson* v. *Cole* (Okl.), 177 Pac. 570, where the court construed a similar provision of the Constitution of the state of Oklahoma and held that the defense of contributory negligence in all cases whatsoever must be left to the jury, and that the finding of the jury upon the defense is conclusive upon the court. The case was one where the deceased, without anything to obstruct his view of the approaching train for more than a block away, stepped in front of it and was instantly killed. The case was affirmed by the United States Supreme Court. 251 U. S. 54, 64 L. Ed. 133, 40 Sup. Ct. Rep. 68. Since the decisions above cited were handed down the same question arose in the case of *Southern Pac. Co.* v. *Martinez* (C. C. A.), 270 Fed. 770. In that case the plaintiff's intestate was killed while attempting to cross the railroad track at a crossing in an automobile in full view of the approaching train. Judge GILBERT, Circuit Judge, speaking for the court of appeals, said:

''The negligence of the driver and of the plaintiff's intestate in so attempting to cross the track might have been sufficient to justify the court below in directing a verdict for the defendant, but for the fact that the Constitution of Arizona provides: 'The defense of contributory negligence or assumption of risk shall in all cases whatsoever be a question of fact and shall at all times be left to the jury.'

''A similar provision in the Constitution of Oklahoma was under consideration in *Chicago, R. I. & Pac. Ry. Co.* v. *Cole,* 251 U. S. 54, 64 L. Ed. 133, 40 Sup. Ct. Rep. 68, in which the constitutional provision was held to require the submission of the

defense of contributory negligence to the jury in a case where the plaintiff's intestate stepped upon the railroad track when a train was approaching in full view and was killed.''

It may be conceded, and it is doubtless true, that—

The provision "does not take from the courts the right to ascertain whether the three necessary elements of primary negligence exist, viz.: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure.'' *Chicago R. I. & P. Ry. Co.* v. *Barton,* 59 Okl. 109, 159 Pac. 250.

But in the instant case, as we have already said, there was sufficient evidence of the defendant's primary negligence in operating the train, to send the case to the jury.

The contention of the defendant that, because the provision is found in the article of the Constitution entitled "Labor,'' it must be limited in its scope and application to the relation of master and servant, cannot be sustained. The language is too broad and comprehensive to admit of such a narrow construction. The language is "defense of contributory negligence . . . shall in all cases whatsoever be a question of fact,'' etc.

The defendant attempts to draw a nice distinction between primary negligence and contributory negligence, and contends that contributory negligence was not involved in the case; that plaintiff's intestate was guilty of culpable negligence resulting in his own death. But, if the defendant was guilty of primary negligence in the operation of the train, whereby the plaintiff's intestate was killed, as the jury found, the conduct of the plaintiff's intestate, if blameworthy at all, could only amount to contributory negligence, however gross or culpable his conduct may have been. In short, if the defendant was

guilty of negligence in the first instance which caused the accident, the only defense left to the company was the contributory negligence of the plaintiff's intestate. Furthermore the court, by several instructions, submitted the question of contributory negligence to the jury, and such action is not assigned as error in this court.

It is urged that the following instruction, given by the court, was erroneous:

"In the absence of credible evidence on the question of whether plaintiff's decedent exercised due care in going upon the railroad crossing where he was killed, you must presume that he did. The burden is upon the defendants to show the contrary by a preponderance of the evidence. Therefore, if, under all the proven facts and circumstances of the case, the evidence of the defense is not of sufficient weight to establish the defendant's allegations in this respect by a preponderance of the evidence, your finding must be in accordance with such presumption of due care."

We see nothing wrong with the instruction. It is true that the plaintiff did not establish affirmatively that the decedent stopped to look or listen before attempting to cross the track. But this the plaintiff was not bound to do. Contributory negligence is a matter of defense, and the plaintiff is not required to prove its absence as a part of his case. The law presumes that the injured party was in the exercise of due care until the contrary is made to appear. The presumption is founded on a law of nature and has for its motives the fear of pain, maiming, and death. Now, in this instruction the court did not tell the jury that all those who cross railroad tracks stop, look, and listen, or that the deceased did so, but that, in the absence of credible evidence to the contrary, he was presumed to have done so, and it was left to the jury to say if there was such credible evidence.

We do not think the instruction conflicts with the case of *Morenci Southern Ry. Co.* v. *Monsour,* 21 Ariz. 148, 185 Pac. 938, decided by this court. That was a case in damages for the destruction of an automobile at a railroad crossing. The driver of the automobile was a witness at the trial and was free to relate the circumstances attending the accident. He could tell whether he stopped, looked, and listened or not. The case only holds that the particular circumstances of the case rebutted the presumption that plaintiff stopped, looked, and listened, and therefore he was not entitled to the instruction. In the case at bar all the occupants of the automobile were killed, and no one was left to tell what the plaintiff's intestate did or failed to do. He may have stopped and looked and listened before the fireman saw him about to drive the automobile upon the crossing, and was prevented from seeing the train or hearing it by the high wind then prevailing and the dust in the air. The law does not prescribe any particular distance from the railroad track at which a traveler shall stop, look, and listen. 33 Cyc. 1012, note 39.

The court instructed the jury to the effect that it is negligence for a railroad company before crossing any public highway to omit to cause the bell upon the engine to be rung or the whistle to be sounded at a distance of at least eighty rods from the crossing and up to the crossing. The defendant argues that the instruction was erroneous. The main contention in this respect is that the instruction was not applicable to the facts of the case, there being no evidence tending to prove that the crossing in question was a public highway crossing within the meaning of the statutes of Arizona; that is to say, there was no proof that the highway in question had been declared to be a public highway by the board of supervisors of the county, as required by paragraph 5055, Re-

vised Statutes of Arizona of 1913. But there is evidence in the record tending to show that the highway had long been used by the public, and that the crossing was long known and recognized by the railroad company as a public railroad crossing. This evidence justified the instruction. 33 Cyc. 921, 924, 928. The instruction seems to have been predicated upon section 397 of the Penal Code, Revised Statutes of Arizona of 1913, which provides that:

"Every person in charge of a locomotive engine, who, before crossing any traveled public way, omits to cause a bell to ring or steam whistle to sound at a distance of at least eighty rods from the crossing, and up to it, is guilty of a misdemeanor."

It is argued that this statute imposes no duty upon the railroad company; that it is confined to the engineer. We do not think so. We think the duty imposed by the statute extends to the company. We place this construction of the statute upon the broad and general principle that the master may fairly be held to be under obligations to see that his servants do not violate the criminal law in the operation of his equipment, and that legislative precaution for public safety should be obeyed by his employees. *Libaire* v. *Minneapolis & St. L. R. Co.,* 113 Minn. 517, 130 N. W. 8; *Chicago etc. R. Co.* v. *Biddinger,* 63 Ind. App. 30, 113 N. E. 1027. See, also, *Denver Omnibus & Cab Co.* v. *Mills,* 21 Colo. App. 582, 122 Pac. 798.

The view we take of the subject is well supported by Mr. Thompson in his Commentaries on the Law of Negligence. In volume 1, paragraph 520, of his work he says:

"It is scarcely necessary to say that the rule of *respondeat superior* operates to charge masters in the case where the act done by the servant is prohibited by statute, so as to become under principles

elsewhere discussed negligence *per se,* as well as to cases where the act of the servant amounts to negligence under the principles of common law."

In almost every state it is made by statute the duty of the engineer, in approaching a crossing, to sound his whistle, or ring his bell, or both.   Where the statute imposes the duty, a failure to comply with it is negligence *per se.*   2 Shearman & Redfield on the Law of Negligence (6th ed.), par. 467; *Lehigh Valley R. Co.* v. *Kilmer,* 231 Fed. 628, 145 C. C. A. 514; *Platte & Denver C. & M. Co.* v. *Dowell,* 17 Colo. 376, 385, 30 Pac. 68; *Richardson* v. *El Paso Con. G. & M. Co.,* 51 Colo. 440, 118 Pac. 983, 986.

Objection is made to the following instruction given to the jury:

"You are instructed that, even if you find it to be true that the decedent did not stop, look, and listen, before going upon the railroad crossing, such omission did not in itself make him guilty of contributory negligence as a matter of law.   The test is rather whether under all the circumstances disclosed he exercised ordinary care for his own safety."

We think the instruction correctly states the general rule of law.   Mr. Thompson in his work on the Law of Negligence, volume 2, paragraph 1647, says:

"But it is plain that there can be no absolute rule of law on the question of the duty of the traveler to stop and listen, which will be applicable to all cases. Whether this is a reasonable precaution depends upon the circumstances of each case.   It cannot therefore be said as an unbending rule of law, that it is contributory negligence for a traveler to attempt to drive across a railroad track on a public highway without first stopping and listening; but it will in many, perhaps in most, cases be a question of fact for the jury."

See, also, *Elkins* v. *Western Maryland R. Co.,* 76 W. Va. 733, 1 A. L. R. 198, 86 S. E. 762, and cases collected in the annotation.

Some complaint is made of an instruction based upon the alleged failure to have the headlight of the engine burning at the time of the accident. There was evidence *pro* and *con* whether the headlight was burning at the time, as well as whether it was necessary that it should have been burning, owing to the hour. It is very questionable if the matter had any influence with the jury in arriving at the verdict. However, the instruction was proper under the circumstances.

The court refused to give the following instruction, requested by the defendant:

"You are instructed that one who is approaching a railroad track cannot rely upon the fact that a whistle would be sounded, or that a bell would be rung, or that lights would be displayed, but he must so approach the track that even though a whistle were not blown or a bell rung, or that no signals were given, he could stop his vehicle in time to avoid danger."

It appears to us that, if such an instruction was given in an action for damages arising out of an accident at a railroad crossing, the effect would be to deprive the traveler of any right to expect that the railroad company would perform its duty and give the signals which the statute requires. *Toledo, St. L. & W. Ry. Co.* v. *Lander,* 48 Ind. App. 56, 95 N. E. 319. The court, however, gave the following instruction to the jury, which in our opinion is all that the defendant was entitled to upon the subject:

"You are instructed that one who is approaching a railroad track cannot solely rely upon the fact that a whistle would be sounded, or that a bell would be rung, or that lights would be displayed, but he must so approach the track that even though a whistle were not blown or a bell rung, or that no signals were given, he could stop his vehicle in time to avoid danger."

The court refused to give an instruction for the
defendant upon the comparative weight and value of
positive and negative testimony as to ringing of the
bell and sounding of the whistle by the railroad com-
pany.   Such an instruction might possibly be correct
in a case where the testimony as to the sounding of
the whistle or ringing of the bell was wholly negative
in character.   It may be true that testimony ''I did
not hear'' is entitled to no weight in the presence of
affirmative testimony to the contrary.   But in this
case there was some testimony from witnesses who
were paying attention that the whistle was not
sounded and the bell was not rung.   *Northern Pac.
Ry. Co.* v. *Freeman, supra.*

The court refused the following instruction:

''You are instructed that as a matter of law it is
not the exercise of ordinary care and prudence for a
person to drive an automobile upon the railroad cross-
ing known to him at the time to be dangerous without
making an effort by stopping, looking, and listening,
where such stopping, looking, and listening would be
effective, or otherwise to ascertain whether a train
is approaching from either direction or whether it
is safe to go upon the tracks with his automobile.''

We do not think that it can be affirmed as a matter
of law that there is an absolute duty upon the driver
of an automobile to stop, look, and listen in all cases
before he attempts to cross a railroad track.   *Louis-
ville & N. R. Co.* v. *Williams,* 172 Ala. 560, 55 South.
218; *Atlantic Coast Line R. Co.* v. *Jones,* 16 Ala. App.
447, 78 South. 645; *Graves* v. *Northern P. R. Co.,* 30
Idaho, 542, 166 Pac. 571; *Lorenz* v. *Burlington, C. R.
& N. R. Co.,* 115 Iowa, 377, 56 L. R. A. 752, 88 N. W.
835; *Woehrle* v. *Minnesota Transfer R. Co.,* 82 Minn.
165, 52 L. R. A. 348, 84 N. W. 791; *Campbell* v.
*Chicago G. W. R. Co.,* 108 Minn. 104, 133 Am. St. Rep.
417, 28 L. R. A. (N. S.) 346, 121 N. W. 429; *Pennsyl-*

*vania R. Co.* v. *Middleton,* 57 N. J. L. 154, 51 Am. St. Rep. 597, 31 Atl. 616; *Johnson* v. *Seaboard Air Line R. Co.,* 163 N. C. 431, Ann. Cas. 1915B, 598, 79 S. E. 690; *Davidson* v. *Seaboard Air Line Co.,* 170 N. C. 281, 87 S. E. 35; *Case* v. *Atlantic & C. Air Line R. Co.,* 107 S. C. 216, 92 S. E. 472; *Southern R. Co.* v. *Terry,* 3 Tenn. Civ. App. 445; *Olsen* v. *Oregon Short Line & U. N. R. Co.,* 9 Utah, 129, 33 Pac. 623; *Hull* v. *Seattle R. & S. R. Co.,* 60 Wash. 162, 110 Pac. 804; *McKinney* v. *Port Townsend & P. S. R. Co.,* 91 Wash. 387, 158 Pac. 107.

The following instruction was refused to the defendant:

"If you believe from the evidence that plaintiff's decedent was trying to cross the track ahead of the train over the crossing, then you are instructed that plaintiff cannot recover in this action, and your verdict should be in favor of the defendant."

The authorities last cited prove that it would have been error to have given the instruction. Furthermore, the instruction, if given, would have had the effect to impose upon the plaintiff's intestate the whole duty of avoiding the collision. Said Mr. Justice BRADLEY, in *Continental Improvement Co.* v. *Stead, supra:*

"Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty."

"The right of precedence [in the railroad] referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach."

We have carefully examined and considered all of the remaining assignments of error, but, without fol-

lowing the arguments of counsel for the defendant any further, we simply say that we have been unable to find any ground upon which we would be justified in reversing the judgment and ordering a new trial. The instructions of the trial judge to the jury upon the whole case seem to be in entire conformity with the law applicable to the facts. After all is said and done, the case amounts to this: A jury has returned a verdict against the defendant for negligence, based on conflicting evidence. We are not authorized to disturb the verdict.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.