[Civil No. 4498.   Filed October 19, 1942.]

[129 Pac. (2d) 991.]

I. E. DOTY and MARY DOTY, his wife, Appellants, v. THE SOUTHERN PACIFIC COMPANY, a Corporation, Appellee.

Messrs. Dykes & Selden, for Appellants.

Messrs. Baker & Whitney, and Mr. Harold E. Whitney, for Appellee.

LOCKWOOD, C. J.—I. E. Doty and Mary Doty, his wife, plaintiffs, brought suit against Southern Pacific Company, a corporation, defendant, for damages alleged to have been sustained by the negligence of the latter. After plaintiffs had filed their first amended complaint, defendant moved to dismiss on the ground that it did not state a cause of action, and the motion was granted, whereupon this appeal was taken.

The sole question before us is whether the amended complaint states facts showing that plaintiff Mary Doty's injuries were caused by the negligence of defendant. Its allegations, after setting up the capacity of the parties and that defendant operated a railroad system crossing State Highway No. 86, continued, so far as material, as follows:

"IV. That at the said crossing, the defendant, . . . maintained four railroad tracks including its main line running approximately in an easterly and westerly direction, as the said Highway No. 86 crosses all four of said railroad tracks in approximately a northerly and southerly direction.

"V. That, . . . a Y or spur track, which runs in *in* a generally northeasterly direction, . . . is and was maintained by the defendant at said crossing.

"That to the north and west of said Y or spur track, the said Highway No. 86 is in a long, sweeping curve so that the lights of an automobile approaching said crossing at night are thrown off of the road and to the left side thereof. That there are, and were on November 18th, 1940, no warning signs upon the left side of said highway and to the north of said main crossing or of said spur . . . .

"That immediately after crossing the aforesaid spur track, the aforesaid highway, . . . does, drop down a steep incline to within a short distance of the aforesaid main crossing over defendant's railroad tracks.

"That at a distance of about forty-six (46) feet from the northermost of said railroad tracks, at said main crossing, there was, at the time of the accident herein complained of, a low place or gully where the road was worn and rough. To the south of this gully, thereto, there was at said time, and had been for a long time prior thereto, to the knowledge of the defendant, a leveling off from the steep descent of the road from the aforesaid spur track, and a rise in said highway to the said crossing, so that the lights of an automobile, after crossing said spur track, would be thrown downwards as far as the bottom of said steep incline and then absorbed in the roadway beyond.

"That the crossing sign maintained by the defendant to the north of said Y or spur track was entirely on the right or west side of the highway, . . . .

"That the crossing sign to warn travelers of the main tracks was also on the west of said Highway No. 86, . . . . That said Highway No. 86, is and was at all times material hereto, a much used road for both intrastate and interstate travel both by day and by night.

"VI. That on November 18, 1940, at or about the hour of 1:25 o'clock in the morning . . . , and while it was very dark, the plaintiffs were traveling slowly in their Ford automobile . . . , in a southerly direction along and upon said Highway No. 86 and approaching the aforesaid crossing . . . . That . . . neither of plaintiffs had ever been over the particular portion of State Highway No. 86 hereinabove mentioned and neither of plaintiffs had any knowledge whatever of the proximity of the aforesaid R. R. Crossing. That at the time the plaintiffs were approaching said crossing as aforesaid the defendant negligently and carelessly caused a very long freight train to be stopped for a considerable length of time upon the northernmost rails of its main tracks across said Highway, and with its engine far to the east of said crossing."

The complaint then alleges that the automobile in which plaintiffs were traveling ran into the freight train, and plaintiff Mary Doty was seriously injured. It is alleged that defendant was negligent in that it did not give certain specified warning signs of the presence of the train and track aforesaid.

■■ We must, of course, for the purpose of the appeal, assume that the allegations of fact in the complaint are true. We must also assume that if there is any omission of facts necessary to sustain the complaint, such facts do not exist, for pleadings are taken in the strongest manner against the pleader.

It is admitted by plaintiffs in their brief that it was neither statutory nor common-law negligence for

defendant to stop its train across the highway as it did. It is further admitted that it did not violate any statutory provisions in regard to the warning it was required to give of the presence of either the train or the tracks. But, it is contended that defendant was guilty of common-law negligence in failing to give such warning as was reasonably required under the peculiar physical conditions existing at the time and place of the accident.

It is almost universally held that usually, when the driver of an automobile runs into a train standing still across a highway, no recovery can be had by the driver for damages caused by the collision. But there is an exception to this rule. When the railroad company has failed to give such notice of the presence of the track and train as a reasonably prudent man would be expected to give *under the particular circumstances*, it is guilty of negligence and the question of liability is one for a jury. We consider the rule and the exception as applied to the particular circumstances of the case.

The allegations of the complaint in regard to negligence may be summarized as follows: At the place where the accident occurred defendant maintained four main tracks running approximately east and west, and a spur track running northeasterly from the north main track at a "short distance." Highway No. 86 approaches the spur by a long, sweeping curve and then crosses the spur and main tracks at approximately a right angle. On the right-hand side of the highway there is a warning signal of the usual type before reaching the spur, and another one before reaching the main tracks. After crossing the spur the highway dips sharply to a little gully, and immediately after it crosses this gully straightens out to a level approximately 46 feet from the main tracks of de-

fendant. The situation is such that an automobile approaching the spur track will have its lights deflected to the left on account of the curve, so that the stop signal to the right of the spur track is not visible. There is no allegation, however, as to whether, at the place where the highway actually crosses the spur, the stop signal by the main tracks or the main tracks themselves, or a train standing thereon, would be visible at night to the driver of an automobile by its headlights. It is further alleged that *after* the spur track is crossed the lights of an automobile will be deflected downward, due to the sharp dip in the road, so that they will not show the presence of the main tracks or a train standing thereon, until the automobile passes the bottom of the dip. It is not specifically alleged what the situation, so far as visibility is concerned, will be *after* the automobile has passed the bottom of the dip. Nor is it alleged that in ordinary daylight the whole situation is not clearly visible to the driver of an automobile before he reaches the spur track.

Taking the complaint as a whole, it is obvious that the theory of plaintiffs is that defendant, knowing how automobile lights would be deflected by reason of the curve and the dip, was required, in the exercise of reasonable care, to provide some special method of warning to drivers passing along the road in the nighttime. We must, therefore, consider what the duty of defendant was, under the circumstances.

■■ The condition existing was a permanent one and not one fluctuating from time to time, such as we find in certain cases involving fog or dust. Defendant was, therefore, bound to have knowledge of the existence of the curve and dip in the road, and that automobile lights would be deflected either sideways or up and down so that the road, and, therefore, the

tracks which crossed it, was not plainly visible at all times to drivers approaching from the north. It was, however, also entitled to assume that drivers of automobiles would obey the rules of the road and would exercise reasonable precautions in driving, and was not required to anticipate and take precautions for the safety of drivers who disregarded these rules. What, then, are the reasonable precautions which the driver of an automobile should exercise when driving at night?

We have laid down one of those precautions in two cases. In *Dennis* v. *Stukey*, 37 Ariz. 299, 294 Pac. 276, 278, we said:

"The rule fixing the duty of the driver of an automobile who is blinded by the lights of an approaching automobile is well stated in *Ruth* v. *Vroom*, 245 Mich. 88, 222 N. W. 155, 156, 62 A. L. R. 1528, as follows:

" 'It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. . . .' "

The same question arose in the case of *Coe* v. *Hough*, 42 Ariz. 293, 25 Pac. (2d) 547, 550, and we said:

"In *Dennis* v. *Stukey*, 37 Ariz. 299, 294 Pac. 276, we stated it to be an absolute rule that a driver must, on peril of legal negligence, drive in such a manner as to be able to bring his car to a complete halt within the range of his vision. . . . If an autoist cannot see where he is going he should stop. If his vision is limited he should have such control of his car as to be able to stop within the radius of his vision. If he violates these reasonable and sane rules and runs into some one who is at the time exercising reasonable care, he is, we think, guilty of legal negligence."

This general rule is sustained by the very great preponderance of authorities. 44 A. L. R. 1403; *Morehouse* v. *Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1493; *Hart* v. *Stence,* 219 Iowa 55, 257 N. W. 434, 97 A. L. R. 546.

It is plaintiffs' contention that defendant knew of the physical conditions of the highway and that the vision of the driver of an automobile would be limited by these conditions, and must take reasonable precautions accordingly. This is true, but defendant was entitled to assume that the drivers of automobiles would obey the law and drive their cars in such a manner that they could bring them to a stop within the range of the vision given by their headlights, and the precautions required were limited by this presumption. If plaintiffs had observed this rule, they would have had ample warning of the presence of the train, upon emerging from the dip, in time to stop the automobile before it collided with the train.

A case almost identical in fact with the one at bar is *Sisson* v. *Southern Ry. Co.,* 62 App. D. C. 356, 68 Fed. (2d) 403, decided by the Court of Appeals of the District of Columbia. Therein the court said:

"We think there can be no doubt of the correctness of the general proposition that a railroad company has the right to assume that a reasonably careful man driving at night in an automobile on a highway which he knows is crossed by a railroad will, in approaching such crossing, use such lights and adopt such rate of speed as to be able to stop his automobile in time to avoid hitting a box car standing on the crossing. . . .

"In the case we are considering plaintiff seeks to avoid the effect of this rule by showing that he was unfamiliar with the highway and did not know he was approaching a railroad crossing. He therefore says it was the duty of the defendant to give him warning of the danger. There is no statute law in Virginia requiring lights or gates or other safety devices at the crossing in question. There is, there-

fore, not alleged any failure of statutory duty. There may arise, however, cases in which, notwithstanding the lack of a statute requiring a railroad company to erect warning signs or lights, such a duty may arise out of its obligation not to use its right of way in such manner as will likely produce injury to pedestrians or automobilists using the highway with due care for their own safety. . . . On the contrary, however, if the physical conditions are such that there is no reason to anticipate injury to a person using the highway with due care, no obligation to warn arises.

"Here, as we have seen, there was a bend in the road, which continued to a point approximately 85 feet from the track, measured on the inside of the curve, and considerably farther measured on the outside. This bend of the road, as plaintiff testified, while he was driving on it, deflected the headlights of his automobile from the road into the field beyond so that he could only see objects on the side of the road and not in front of the car in the direction in which he was traveling. In such circumstances as these, the railroad company had a right to anticipate that an automobilist unfamiliar with the road would slacken his speed and keep his automobile under control while his vision was obscured. *The very condition on which plaintiff relies to justify his failure to see the obstruction in time to stop of itself imposed on him the duty of reducing speed and proceeding with caution. Equally the railroad company had a right to anticipate that this would be done.* Obviously, if it had been done, the accident would not have occurred.

. . .

"Here, as in all cases in which a recovery is sought for personal injuries, the plaintiff cannot prevail unless he shows that the negligence of the defendant was the proximate cause of the injury. If there was no negligence, there can be no recovery, and in such a case the question whether the plaintiff was or was not negligent is of no consequence. . . . " (Italics ours.)

Since the very condition which plaintiffs claim prevented them from seeing the train in time to stop imposed upon them the duty of so conducting them-

selves that they could have stopped in time to avoid a collision, we think the complaint fails to show that defendant had any reason to anticipate conduct on the part of a reasonably prudent driver, which would impose on it the duty of giving any further warning than it did.

On the whole case, we are of the opinion that the trial court properly granted the motion to dismiss.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.