185 P.2d 772

**COPE et ux. v. SOUTHERN PAC. CO. et al.**

No. 4929.

Supreme Court of Arizona.

Oct. 20, 1947.

198

Struckmeyer & Struckmeyer and Jack C. Cavness, all of Phoenix, for appellants.

Evans, Hull, Kitchell, Ryley & Jenckes and Norman S. Hull, all of Phoenix, for appellees.

LaPRADE, Justice.

Appellants brought suit for the wrongful death of their eighteen-year-old daughter. The complaint among other things alleged that the Southern Pacific Company maintained and operated certain railroad tracks and lines in Maricopa County and specifically referred to its tracks across what is commonly known as Baseline Road, a public highway. In referring to the crossing where the death occurred, the specific allegations are: " * * * which crossing was negligently constructed and maintained by the said defendant, Southern Pacific Company, so that the said crossing constituted a hidden trap and a danger to persons operating automobiles crossing said track * * *."

There is this additional allegation of negligence: " * * * as the train approached and entered the said crossing, the defendant James E. Smith (engineer) negligently failed to give warning signals of the approach at the crossing."

After both sides had submitted their evidence the court granted a motion for a directed verdict in favor of defendant Southern Pacific Company. At this time the court also denied a motion that had earlier been made by plaintiffs to amend their complaint to conform to the proof on the issue of the Southern Pacific's negligence in maintaining a hidden trap, the ruling on which motion had been taken under advisement and reserved. Plaintiffs' motion

for a new trial did not complain of this ruling of the court in refusing the trial amendment to the pleadings, nor has the ruling in this respect been assigned as an error in this court; hence, under our rules is not here for review. This appeal is from the judgment entered on the directed verdict and the denial of plaintiffs' motion for a new trial.

Ozell Cope, age 18 years, was killed in a collision between an automobile driven by a young man, Warren Jarvis, in which she was riding, and a freight train of defendant Southern Pacific Company, on which defendant Smith was engineer. The collision occurred at 9:45 p.m. January 9, 1942, at the railway crossing over Baseline Road two miles south of Mesa. Jarvis, Miss Cope, and Leland Watkins, all in the front seat, were driving westerly on Baseline Road, and the train was moving in a southerly direction. The automobile ran into the side of the train, and more particularly into the rear end of the 46th car and the front end of the 47th car behind the locomotive. The impact was so severe as to cause the instantaneous death of Miss Cope and Mr. Watkins, and to result in almost total destruction of the automobile.

The highway was straight and was crossed at right angles by two sets of somewhat parallel railroad tracks. The easterly tracks are designated as the Christmas Branch, and the westerly tracks, on which the train was moving, are designated as the main line. The distance between the center lines of the two sets of tracks on the north lane of the highway was 135 feet.

Jarvis had driven over the crossing in the opposite direction about one-half hour earlier in the evening, but he testified that at the time of the accident he was not aware that he was approaching the crossing, and was not looking for a crossing or a train as he approached at an admitted speed of not less than 40 miles per hour, which speed he maintained until he applied his brakes.

When Jarvis drove onto the tracks of the Christmas Branch he saw the train for the first time. He applied his foot brakes immediately and forcibly, but was unable to stop the automobile, which skidded 125 feet into the sides of the freight cars. The night was dark and somewhat cloudy; some rain may have fallen. No dust, smoke, or atmospheric condition interfered with Jarvis' vision, and his eyesight was good. The brakes on the automobile were in good condition. The headlights were on, but Jarvis could not state whether they were on bright or dim. The paved portion of the highway was 16 feet in width. The crossing was marked by two white-painted standard crossarm signs, one near the main-line track and on the south side of the highway, the other near the Christmas line and on the north side of the highway. In addition to these two standard crossarm signs there were two tall white-painted signal towers 30 feet north of the highway,

one approximately five feet south of the south rail of the main line and the other about the same distance north of the north rail of the main line. The main-line tracks were 3½ inches lower than the Christmas Branch tracks, and the highest point between them was five inches above the main line and six inches above the Christmas Branch. The approach to the crossing from the east was on an incline. The rise in grade from the base level of the highway to the Christmas Branch was 3¼ feet from a point 250 feet east of the easterly tracks (Christmas Branch). Additional facts will be stated as necessary to the full development of the opinion.

Appellants have made two assignments of error which are as follows:

### Assignment of Error No. I.

The court erred in directing a verdict in favor of the defendant for the reason that where evidence was presented upon the trial which would have tended to prove that the defendant Southern Pacific Company was negligent in maintaining inadequate warning signals and maintained a hidden trap and danger to motorists using the highway; the question of whether or not the defendant was negligent in these respects became a question of fact which could be properly determined only by the jury.

### Assignment of Error No. II.

The court erred in directing a verdict in favor of the defendants for the reason that the evidence presented by the plaintiffs on the question of whether or not the defendant Smith gave the required bell and whistle signals was of sufficient weight that, even in the face of defendant's evidence to the contrary, the question of whether the signals were given became a question which could be properly determined only by the jury.

These assignments are supported by some 10 propositions of law.

The fact situation here readily disposes of the second assignment of error. There is much made in the briefs as to the position this court has taken at various times upon the value of positive and negative testimony, as where the engineer testified "I blew the whistle and the bell was ringing," and other witnesses testified "I did not hear the whistle blow or the bell ring." See Maricopa & Phoenix & Salt River Valley Railroad Co. v. Dean, 7 Ariz. 104, 60 P. 871; Davis v. Boggs, 22 Ariz. 497, 199 P. 116; Illinois Bankers' Life Ass'n v. Theodore, 44 Ariz. 160, 34 P.2d 423; Canion v. Southern Pacific Co., 52 Ariz. 245, 80 P.2d 397. These cases have no application here for the reason that crossing signals from a locomotive are required by statute solely to warn travelers on the highway of the *approach* of the train to the crossing, Arizona Eastern R. Co. v. Cox, 27 Ariz. 469, 233 P. 1102; secs. 43-4802 and 69-116, A.C.A.1939, both amended by ch. 87, Laws 1943. There is no requirement that the signals shall be given

or continued after the locomotive has passed the crossing. (Id.) The facts in this case clearly call for the application of the rule in the Cox case, supra. From the undisputed evidence, Jarvis was driving not less than 40 miles per hour as he approached the first crossing and passed over it; the train was moving at the rate of 30 miles per hour; and Jarvis hit the side of the train at a point more than one-half mile behind the locomotive. It necessarily follows that the automobile was approximately two-thirds of a mile from the crossing when the locomotive went over the crossing. Defendant Jarvis was the only witness other than the engineer to testify with reference to the sounding of the whistle or lack of it. Jarvis admitted that he was unaware that he was in the vicinity of the crossing; that he wasn't listening for a train whistle or bell; that he did not see the locomotive or its headlight as it approached or went over the crossing; and that he did not know whether or not the whistle was blown or the bell was rung. Had he been in a position to hear the whistle or bell had they been sounded, his testimony would fall into the classification of "negative testimony." There must be a predicate before negative testimony is relevant, or competent. Davis v. Boggs, 22 Ariz. 497, 199 P. 116; Southern Pac. Co. v. Fisher, 35 Ariz. 87, 274 P. 779; Missouri K. & T. R. Co. v. Flowers, 187 Okl. 158, 101 P.2d 816. But where, as here, he wasn't listening for any whistle or bell and was in no position to hear them if sounded, his testimony had no probative value—no more than if he had testified, "I didn't hear any whistle; I was in Phoenix"—(19 miles away).

Appellants in behalf of their first assignment of error have suggested some five propositions of law. Two of them really go to the crux of the matter and are as follows:

## Proposition of Law No. II.

The question of whether or not the warning signs at a railroad crossing were suitable and sufficient to protect the public using the highway over the crossing is a question for the determination of the jury.

## Proposition of Law No. III.

When the railroad company has failed to give such notice of the presence of the track and train as a reasonably prudent man would be expected to give under the particular circumstances, it is guilty of negligence and the question of liability is one for the jury.

Where facts are presented as evidence from which reasonable men might conclude the fact of negligence a jury question is thereby posed is so well settled that it requires no argument. Santa Fé, P. & P. R. Co. v. Grant Bros. Construction Co., 13 Ariz. 186, 108 P. 467; Davis v. Boggs, supra. It is further well settled that in viewing the evidence to determine whether or not it is such that reasonable men might conclude the fact of negligence, such evidence must be viewed

in a light most favorable to him who urges that it be submitted to the jury as against the party who urges that no jury question has been presented. Southern Casualty Co. v. Hughes, 33 Ariz. 206, 263 P. 584; Western Truck Lines, Ltd., v. Du Vaull, 57 Ariz. 199, 112 P.2d 589. The questions here for determination, therefore, may be stated as follows: Did the plaintiffs present evidence to prove (1) that the physical condition of the crossing was such that the existence of a two-track crossing would not be apparent to a reasonably prudent motorist using the highway over the crossing; (2) that the warning signals maintained by defendant Southern Pacific Company were not sufficient to apprise a reasonably prudent motorist approaching the crossing from the east of the existence of the western track of the crossing; and (3) that the physical condition of the crossing made it impossible for a reasonably prudent motorist approaching from the east to see not only the track, but also impossible to see a train occupying the western tracks of the crossing until such motorist had approached within slightly over 100 feet of the western tracks. In Davis v. Boggs [22 Ariz. 497, 199 P. 119], supra, this court said: "* * * A verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions."

and in Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 540, 44 A.L.R. 881: "If, therefore, the plaintiff's evidence and the reasonable inference therefrom, considered, as they must be on this motion, in the strongest light against the defendant, were sufficient to support a verdict, the motion was properly overruled. It is only where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside, that the court is justified in directing a verdict."

Did plaintiffs present a question for the determination of the jury by having presented evidence sufficient to support a verdict? With these rules in mind it becomes necessary for us to make a further delineation of the evidence that was offered in this case.

Mr. Watkins, Sr., testified that he had gone to the scene at nighttime since the accident and made tests under similar conditions. He testified that when driving at 35 miles per hour it was impossible to see the easterly crossarm until right upon it, and that it was not possible to see a freight train on the westerly track until one had reached the top of the first track. In this behalf he testified that he was fortunate enough to be on the scene at a time when there was actually a freight train on the westerly track. A Mr. Joseph B. Harris testified that he was taken to the scene by Mr. Watkins; that he had never been over the road before; that he was not looking for any crossarms, and that he did not see any

until he was right upon them. Similar testimony was offered by a Mr. A. S. Haymore who had lived in the neighborhood for 30 years. He testified that on a dark night a motorist would pass the crossarm without seeing it. Insofar as the visibility of the crossing and the crossarm to an ordinary motorist is concerned, defendants below offered the testimony of the following disinterested witnesses whose testimony in effect is:

Deputy Sheriff Henderson: The highway is straight, without curves; the grade is not steep and does not affect visibility; a crossarm, placed like other crossarms, is about 3 or 4 feet to the right of the road; a motorist driving at 35 or 40 miles per hour, with ordinary headlights, can see the crossarm from 200 to 250 feet, and can see a train on the main line at least 200 feet, before reaching the crossing.

Deputy Sheriff Hamilton: The rise before reaching the Christmas Branch does not interfere with view of the crossing, and a driver with standard headlights can see a train on the main line 250 to 300 feet before reaching the Christmas Branch.

Former Gilbert City Marshal Arnold: The crossarm is about 6 feet from the edge of the pavement; a motorist driving with headlights can see the crossarm and a train on the main line at least 250 feet before reaching the crossing.

Highway Patrolman Gittner: The rise in grade is very slight and gradual, and does not interfere with visibility and, actually, improves visibility of the main line to a motorist driving with headlights; the decrease in grade between the two sets of tracks is very slight; headlights illuminate the crossarm nicely; the crossing can be seen 500 feet ahead with sealed beam headlights, and a train on the main line is visible to a motorist with standard headlights from a distance of 250 feet before reaching the crossing.

Central Arizona Light and Power Company Engineer Frost: The rise in the pavement isn't enough to be noticed by the average driver, and doesn't interfere with view; the crossarm is 8 to 10 feet west of the Christmas Branch, to the right of the highway like all crossarms; a motorist driving with ordinary headlights can see a train on the main line from a distance of about 500 feet.

The witnesses of both plaintiffs and defendants had before them many photographs of the crossing These photographs were offered in evidence and identified by them. The first was taken at a point 50 feet east of the main line; the others were taken at intervals of 50 feet proceeding easterly for a distance of 400 feet from the main-line track. These photographs were identified as clearly portraying the highway, the crossing, the track, and the crossarm. They, pictorially, without distortion and without doubt, confirm the testimony of defendants' witnesses. They graphically disclose that plaintiffs' witnesses were ei-

ther mistaken or not telling the truth. In the photograph taken at a point 400 feet east of the main-line track, about two feet of what appears to be a four-foot, white-painted, rail fence, located west of the main line is visible. Another photograph taken 300 feet east of the main line discloses practically all of the same fence. Another photograph taken.200 feet east of the main-line track discloses an ordinary automobile from the tires up, standing on the main line. The trial court was placed in the position of having plaintiffs' witnesses identify a photograph where, for instance, a "black" horse was displayed which the witnesses called "white."

■ Plaintiffs' evidence was so palpably weak and untrue that it would not have supported a verdict. It was so weak and insufficient that upon a motion for a new trial after verdict any informed and conscientious trial judge would have been constrained to set the verdict aside. When this situation exists there is nothing for the trial judge to do but direct a verdict. Arizona Binghampton Copper Co. v. Dickson, supra; Southern Pac. Co. v. Fisher, supra.

■ In Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S.W. 177, 181, it is said: "* * * We are not bound, even as an appellate court, to believe a mere witness in a case when it appears from conclusive physical facts or otherwise patently that such witness is either perjured or clearly mistaken. * * *" To this observation we wholeheartedly subscribe.

The original complaint was filed June 11, 1943. An identical amended complaint was filed January 28, 1944, except that defendant Smith instead of being designated as "J. B. Smith" was designated as "James E. Smith." In addition to the allegations of negligence above set out and charged against the Southern Pacific and Smith, there were these additional allegations of negligence against defendant Jarvis and the other defendants:

"* * * At the same time, a car operated by Warren Jarvis and in which the deceased, Ozell Cope, was a guest, approached and entered upon the said crossing and the defendant, Warren Jarvis, negligently failed to observe the presence of said train upon the said track, so that the said automobile so operated by Warren Jarvis came into contact and collided with the said train so operated as alleged.

"Due to the concurrent negligence of the defendants, Ozell Cope suffered severe wounds from which she on the same day died, to the damage of the plaintiffs, * * *"

■ The records before us do not disclose when, if ever, defendant Jarvis, was served. In any event he filed no answer until the day the trial opened on April 11, 1946. After counsel for the Southern Pacific Company and Smith had moved for a directed verdict, counsel for defendant Jarvis moved that the complaint be dismiss-

ed as to Jarvis upon the ground that there was no evidence to show any negligence on his part. The court then granted the motion of defendant Jarvis to dismiss "upon the grounds and for the reason that there isn't sufficient evidence to warrant the jury in finding the defendant Jarvis negligent in the operation of the automobile." No formal judgment or judgments were signed by the court. The foregoing orders were entered as minute entries and constituted the judgment. Appellants' notice of appeal was directed to all of the defendants including Jarvis and was "from the judgment rendered in said court in the above-entitled cause on the 12th day of April, 1946, in favor of the above-named defendants and against the said plaintiffs. * * *" Defendant Jarvis has made no appearance in this court and has no standing here. From our delineation of the facts and law that we consider to be applicable we conclude that there was a question of fact to be submitted to the jury respecting the negligence of defendant Jarvis, and that the court was in error in directing a verdict or dismissing the cause as to him.

Therefore, it follows from what we have said that plaintiffs offered no legally sufficient evidence of negligence attributable to the Southern Pacific Company or its engineer Smith from which it might legally be deduced that their conduct in any manner contributed to the accident and death.

The judgment directing verdict in favor of defendant Southern Pacific Company and Mr. Smith is affirmed. The judgment directing a verdict in favor of defendant Jarvis and dismissing the complaint as to him is reversed, and the cause as to him is remanded for a new trial.

STANFORD, C. J., and UDALL, J., concur.