761 P.2d 1029

**Elizabeth Jo TERRANOVA, Plaintiff/Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Delaware corporation, Defendant/Appellee.**

**No. CV–87–0385–PR.**

Supreme Court of Arizona, En Banc.

Sept. 1, 1988.

---

Treon, Strick, Lucia & Aguirre by Richard T. Treon, Arthur G. Newman, Jr., Raymond M. Norris, JoJene E. Mills, Phoenix, for plaintiff/appellant.

Tower, Byrne & Beaugureau by David L. Beaugureau, Anthony J. Hancock, Amy Schwartz, Phoenix, for defendant/appellee.

KLEINSCHMIDT, Judge.*

The plaintiff was injured when she drove into the side of a freight train that was standing across a city street. The trial court granted summary judgment against the plaintiff, holding that the only duty the railroad owed was to warn her that the crossing was blocked. The Court of Appeals, Division 2, affirmed. We vacate the opinion of the court of appeals and reverse the order of the trial court granting summary judgment. We hold that giving an adequate warning that a crossing is blocked will not, under every circumstance, discharge the railroad from liability. Instead, the railroad must act as a reasonably prudent person would act under the particular circumstances of each case. Under the facts of this case, a trier of fact could find the railroad did not meet this standard because there was evidence that the railroad needlessly blocked the crossing and that it could have foreseen that, even when warnings are given, blocked crossings result in accidents.

The plaintiff, Elizabeth Terranova, was driving south on 48th Street in Phoenix at 5:00 o'clock on a Sunday morning. It was dark. A Southern Pacific freight train had stopped with its last few cars blocking 48th Street. Although warning lights and bells

* Chief Justice Frank X. Gordon, Jr. did not participate in this decision; pursuant to Ariz. const. art. 6, § 3, THOMAS C. KLEINSCHMIDT, Judge, Court of Appeals, Division One, was designated to sit in his stead.

were operating and nothing obstructed her view of the crossing, the plaintiff collided with the side of the train. There was evidence to suggest that the plaintiff's vehicle had experienced sudden and total brake failure.

There was also evidence that the train was needlessly blocking the street. The engineer testified that switching operations were in progress and that he had ample room to move the train forward so that the 48th Street crossing would be clear. There was further evidence that to save costs, Southern Pacific had decided not to use a nearby switchyard, although use of the switchyard obviated blocking city streets.

The plaintiff proffered an expert witness to prove that warnings notwithstanding, a blocked crossing is more dangerous to motorists than is an unblocked crossing. She also presented statistics for the year 1980 that showed that in this country 540 motorists collided with trains standing at crossings in the dark although flashing lights and bells were working.

## THE DUTY OF CARE

■ The court of appeals relied on "a clear line of Arizona authority" to conclude that the only duty a railroad owes to the traveling public when it blocks a crossing is the duty to provide an adequate warning. It cited four cases for this proposition. *Doty v. Southern Pac.*, 59 Ariz. 449, 129 P.2d 991 (1942); *Cope v. Southern Pac.*, 66 Ariz. 197, 185 P.2d 772 (1947); *Atchison T. & S.F. Ry. v. Renfroe*, 77 Ariz. 28, 266 P.2d 745 (1954); and *Golfinos v. Southern Pac.*, 86 Ariz. 315, 345 P.2d 780 (1959).

We have a preliminary observation about the cases the court of appeals relied on. In all four of them either the primary or the exclusive focus of attention was on an assessment of the evidence relating to the adequacy of the warnings given. Thus, while the *Doty* line of cases clearly states the principle for which the railroad cites those cases, in none of them was the court forced to come to grips with the question this case presents. Further, in *Doty*, upon which *Renfroe* and *Golfinos* both rely, the plaintiff *conceded* that the railroad's sole

duty was to give an adequate warning. In *Cope*, the plaintiff's evidence of a failure to warn and of negligent design of the crossing was so weak that the court concluded that a directed verdict was mandatory.

It is not necessary to rely on the distinctions between the *Doty* line of cases and this case, however, because those decisions were impliedly overruled by the decision of this court in *DeElena v. Southern Pac.*, 121 Ariz. 563, 592 P.2d 759 (1979). In *DeElena*, the plaintiff's decedent was killed when she was struck by a train while riding her adult tricycle through a grade crossing. The crossing was marked with pavement markers, a reflectorized warning sign, and a crossbuck on a pole on which were mounted a bell and two flashing red lights. The train had been sounding its horn intermittently as it approached the crossing and the double headlights of the engine were on high beam. The deceased rode directly onto the track in the face of the oncoming train. A jury found against the plaintiff and in favor of the railroad.

The plaintiff's theory was that the railroad was guilty of negligence, indeed, wanton negligence, in failing to provide the crossing with automatic gates. This court was called upon to consider, among other things, whether the trial court erred in refusing to admit certain studies and reports relating to accidents at railroad crossings which would have supported the plaintiff's argument that there should have been an automatic gate at the crossing. In ruling, this court clearly set forth the standard that governs the duty of a railroad with respect to grade crossings:

Because of the appellee's [the railroad's] repeated insistence, both here and in the court below, that its sole duty is to warn travelers on the highway, it is appropriate to reiterate the statement this Court made in 1956 in *Southern Pacific Railroad Co. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827:

'It is axiomatic that a railroad company owes to travelers on the highway the affirmative duty of due care in the maintenance and safeguarding of its crossings and in the operation of its

trains thereon. What constitutes such due care is measured in each instance by the facts of the particular situation.

*   *   *   *   *   *

* * * The common law standard of conduct applicable to a railroad company as to all persons in order to escape liability for injuries of another is to attain the status of a reasonably prudent person under the particular circumstances.' 80 Ariz. at 58–59, 292 P.2d at 832–33.

Not only must the railroad give reasonable warning of the crossing and the approach of a train, *Atchison Topeka & Santa Fe Ry. Co. v. Renfroe,* 77 Ariz. 28, 266 P.2d 745 (1954), but it must take precautions commensurate with the danger involved at the crossing to avoid injury to the traveling public. See *Peri v. Los Angeles Junction Ry.,* 22 Cal.2d 111, 137 P.2d 441 (1943). Where, in a congested area, a crossing is obstructed and is the site of an accident:

'  * * * it may not be enough for the railroad to protect its crossing with the standard crossbuck, to operate its train within the speed limit, and to blow the whistle and ring the bell. The jury is still permitted to determine whether the railroad exercised reasonable care and caution under the circumstances and conditions existing at the time of the accident.' *Seaboard Coast Line Railroad Co. v. Buchman,* 358 So.2d 836, 839–40 (Fla.App.1978).

Hence, whether a railroad is negligent in a particular manner, such as in failing to provide automatic crossing gates, is a question of fact for the jury.

*DeElena,* 121 Ariz. at 566, 592 P.2d at 762.

*DeElena* is directly on point. In it, the plaintiff squarely claimed negligence of a type other than a failure to warn. The railroad insisted that its duty was discharged when it provided adequate warning. The court squarely rejected the railroad's argument. The trier of fact in this case is as much entitled to consider whether the freight cars should have been sitting needlessly on the crossing as the trier of fact in *DeElena* was entitled to consider

whether an automatic gate was necessary at a particular crossing.

The railroad seeks to distinguish *DeElena* with the observation that it is an "approaching train" case as opposed to a "blocked crossing" case like *Doty.* It argues that in an "approaching train" case the inquiry cannot be limited to the adequacy of warnings because such questions as whether the train could have stopped in time to avoid the accident are relevant. It develops the distinction further by arguing that once a train is standing on a crossing there is nothing the railroad can do to avoid the accident except give warnings.

■ There is a leap in the logic of the railroad's argument. What it ignores is the fact that if the train had not been standing on the crossing the accident would never have occurred. Whether there is a reason for the train to be standing on the crossing is a circumstance which the trier of fact can consider in deciding whether the railroad breached its duty to act in a reasonably prudent manner.

At least one other decision recognizes this precise point. In *McLaughlin v. Chicago, M. St. P. & P. Ry.,* 31 Wis.2d 378, 143 N.W.2d 32 (1966), the plaintiff was injured when the car in which he was riding struck a freight train that had been left blocking a crossing while the train crew went to dinner. The railroad did not present a reason why the train could not have been moved off the crossing. The accident occurred at night and there were no warning devices at the crossing. While the lack of warning devices distinguishes *McLaughlin* from the case before us, it is a distinction which has no meaning in this case. The Supreme Court of Wisconsin specifically said that *needless* blocking of the crossing was a factor that the trier of fact could consider in deciding whether or not the railroad was negligent. It stated:

In determining whether employees of the railroad were negligent in leaving them [the boxcars] there, *the utility of such act in the operation of the railroad must be balanced against such risk.* Where ordinary and reasonably necessary operations of the railroad are in-

volved we have traditionally made the policy judgment that the motorist must take care of himself, *but if the creation of the danger serves no useful purpose,* the motorist must surely be entitled to consideration.

*Id.* at 388, 143 N.W.2d at 36–37 (emphasis added).

The railroad also argues that in *Fuller v. Southern Pac. Transp.*, 122 Ariz. 588, 596 P.2d 726 (App.1979), the Court of Appeals, Division 2, reaffirmed the principle that in a "blocked crossing," as opposed to an "approaching train" case, the only duty the railroad has is the duty to warn. In *Fuller*, a case which involved an allegation that the train was speeding and failed to apply its brakes and also failed to give a warning, the court held that a train approaching a crossing was responsible for more than a duty to warn of its presence. Instead of observing that this same rule might well apply to "blocked crossing" cases, it distinguished the *Doty* line of authority by citing an earlier case, *Southern Pac. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827, (1956), which had observed that cases like *Doty* merely stood for the proposition that a standing train is itself adequate warning to an approaching traveler.

Several observations about *Fuller* are pertinent. First, since it dealt with a moving train, a facile distinction of the cases like *Doty* sufficed for the purposes of the opinion. There was simply no need for the court to pursue an analysis of the *Doty* rationale. Second, when the court of appeals decided *Fuller*, it was apparently unaware of the then very recent decision in *DeElena;* and third, even if *Fuller* can be read as reaffirming cases like *Doty*, we are not bound by it.

Finally on this issue, our holding is consistent with the general principle we made clear in *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 706 P.2d 364 (1985). There, the question was whether the state owed a duty to a boy who was injured when he dived into shallow water in a lake which bordered a state park. The state insisted that it owed no duty to protect the public against the natural environment and the court of appeals agreed, observing that if such a duty were found to exist it would be difficult to say where it would begin and where it would end. This court disagreed, noting that the issue could not be resolved by inquiring into the details of exactly how the state might discharge its responsibility, and observed:

> We have previously explained that we disapprove of attempts to equate the concept of duty with specific details of conduct.

*Id.* at 355, 706 P.2d at 367.

■ This observation is as true in "blocked crossing" cases as it is in any other negligence case. The railroad has a duty to the traveling public to act in a reasonably prudent manner. To determine if the railroad has acted in accordance with this duty the trier of fact may look to all the specific details of the conduct of the parties, including the frequency of accidents at crossings where warning signals are operating and whether the crossing was blocked unnecessarily.

## CAUSATION

■ The railroad argues that the fact that the train was standing at the crossing was not the cause of the accident but instead was simply a fortuituous circumstance, a condition under which the collision occurred which was not the cause of it. It cites several cases, *Orton v. Pennsylvania Ry.*, 7 F.2d 36 (6th Cir.1925); *Capelle v. Baltimore & O.R.*, 136 Ohio St. 203, 24 N.E.2d 822 (1940); and *Union Pac. Ry. v. Cogburn*, 136 Colo. 184, 315 P.2d 209 (1957), in support of its position. Two of these cases, *Capelle* and *Cogburn*, recognize the existence of contrary authority. We disagree with both the rationale and result of the cases the railroad relies on. An act may be said to be the cause of an accident if it helped cause the final result and if the result would not have occurred without the act. *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). With that definition in mind, common sense leads to the conclusion that the trier of fact could find that leaving the train on the crossing was a cause of the accident.

■ If the matter is viewed as one of superceding cause, that is, that the plaintiff's negligence, and/or the sudden brake failure, superceded the railroad's alleged

negligence, the test is whether the plaintiff's conduct and/or the brake failure were unforeseeable and extraordinary. *Ontiveros*, 136 Ariz. at 506, 667 P.2d at 206. Again, common sense and the plaintiff's proffered expert and statistical evidence leads to the conclusion that these circumstances were not necessarily a superceding cause of the accident.

The order of the superior court granting summary judgment for the defendant is reversed. This matter is remanded to the trial court for further proceedings.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.,

HOLOHAN, Justice, dissenting.

For many years this court and a host of other state courts have recognized a difference in the nature of the duty owed by a railroad company to motorists in "blocked crossing" cases versus "approaching train" cases. The long line of Arizona cases beginning with *Doty v. Southern Pac. Co.*, 59 Ariz. 449, 129 P.2d 991 (1942), hold that the only duty a railroad owes to the traveling public when it blocks a crossing is to provide an adequate warning. Until the court's decision today that has been the consistent and often repeated rule for "blocked crossing" cases.

The court now maintains that the *Doty* line of cases was impliedly overruled by our decision in *DeElena v. Southern Pac. Co.*, 121 Ariz. 563, 592 P.2d 759 (1979). The court has clearly erred in its reading of *DeElena*. Both *DeElena* and the case it relied on, *Southern Pacific Railroad Co. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827 (1956), are "approaching train" cases. The distinction between the "blocked crossing" and approaching or moving train cases was explained in *Mitchell*:

> Defendants unwarrantedly place great reliance upon four cases decided by this court which set forth the extent of the duty of reasonable and adequate warning which a railroad company owes a motorist once a train is actually upon and blocking the crossing. These are *Doty v. Southern Pac. Co.*, 59 Ariz. 449, 129 P.2d 991; *Malin v. Southern Pac. Co.*, 62 Ariz. 126, 154 P.2d 790; *Cope v.*
> *Southern Pac. Co.*, 66 Ariz. 197, 185 P.2d 772; *Atchison, T. & S.F. Ry. Co. v. Renfroe*, 77 Ariz. 28, 266 P.2d 745. Those cases stand for the proposition that once a train has occupied a highway crossing no duty arises for the railroad company to give any additional notice of the presence of the train upon the crossing, for the train itself is adequate warning to the approaching traveler. It is to be noted that this proposition is not applicable to the case here, for obviously this is not a "blocked crossing" situation. Simply enough, the train had not so occupied the crossing as itself to give adequate warning of its presence where, as here, the lead boxcar and the automobile reached the intersection at the same moment.

80 Ariz. at 58, 292 P.2d at 832.

Both in *DeElena* and *Mitchell* the trains were moving across a street, and the rule of law applicable was that the railroad company must operate the train using reasonable care. The railroad is not free to rely solely on its warning devices, but it must use reasonable care in running the train across a street or highway.

The distinction between the two types of situations at a railroad crossing has long been recognized in this state and the great majority of jurisdictions. A stationary train which is blocking a road crossing is passive and usually plainly visible. The presence of the train, at rest, and warning devices have been considered adequate notice to the public. The moving train has presented a different problem, and the cases have recognized the difference and fashioned a different rule.

The Wisconsin case cited in the majority opinion, *McLaughlin v. Chicago, M., St. P. & P. Ry. Co.*, 31 Wis.2d 378, 143 N.W.2d 32 (1966), is a blocked crossing case, but it is not authority against the Arizona rule. The *McLaughlin* trial judge found that the railroad was negligent because the railroad crew left the railroad crossing blocked without any warning signals to warn of the presence of the cars and the crew went off to have supper.

The Wisconsin Supreme Court concluded that there was no interest to the railroad

that was reasonably served by leaving the freight cars on the crossing without any warning to the traveling public. The railroad crew left the rail cars blocking the crossing longer than necessary to complete the switching operation so the crew could go to supper. Under such circumstances, the appellate court concluded that the trial court was correct in determining that the railroad was negligent as a matter of law. The factual situation is aptly portrayed by the following from the opinion:

The crossing where the collision occurred is near Crivitz. Highway 141, a principal highway in that area, runs north and south and the track intersects it at right angles. The Beemster automobile struck one of a string of freight cars which were standing still obstructing the crossing. It was dark; there were occasional snow flurries; the automobile approached from the south at about 45 miles per hour. The car obstructing the highway was a flat car, with a crane mounted on it. Plaintiff saw it first, when it was a little more than one hundred feet ahead. There was no automatic signal, flagman or fusee at the crossing.

143 N.W.2d at 35.

Under our previous case the decision in *McLaughlin* would be the same in Arizona because the railroad did not provide adequate warnings at the crossings.

Under the facts in the case at issue, there were adequate warnings in place at the crossing, at least one or more cars had stopped for the train, the train had been on the crossing for about ten minutes, which is within the fifteen minutes allowed by A.R.S. § 40–852, and the plaintiff ran into the side of one of the rail cars. Under the long standing rule in this state, the trial judge and the court of appeals ruled that the railroad had not breached its duty to the public because it had provided reasonable and adequate warning that the train was blocking the crossing.

Apparently the court today believes that a railroad may not block a street or highway if it can avoid it. The only area of possible fault suggested by the court in this case is that the railroad could have

moved the train and not blocked the crossing. This new rule now requires the railroad to face liability anytime it blocks a highway crossing. Of course the reason for blocking the highway can be explained to a trial jury, and the jury will decide whether such action was reasonable. The ruling in this case will subject railroads to great confusion about what their rights and duties are in blocking street and highway crossings. Until today the rule had been that the railroad might block a highway crossing for up to fifteen minutes. A.R.S. § 40–852. Although a statute is usually thought to represent the public policy of the state, the court has chosen to adopt a different policy by, in effect, saying that a railroad may be found to be negligent if it blocks a highway crossing for any period of time.

Our previous cases, outlining the duty of the railroad in blocked crossing cases, were good law and sensible. Under those prior decisions the facts of this case show that the railroad did not violate its duty to the plaintiff; therefore, the decision of the Court of Appeals was correct, and the judgment of the trial court should be affirmed. I dissent from the opinion of the court.